Elizabeth HANSON, Bonnie Kuczkowski, and Bonnie Kuczkowski On behalf of Beverly Napier, Appellants–Petitioners,

v.

THE VALMA M. HANSON REVOCABLE TRUST and Barry Bergstrom, Appellees–Respondents.

No. 45A05–0508–CV–492.

Court of Appeals of Indiana.

Oct. 23, 2006.

Robert A. Welsh, Harris Welsh & Lukmann Chesterton, IN, Attorney for Appellants.

Mark A. Bates, Schererville, IN, Attorney for Appellees.

**OPINION**

BAKER, Judge.

This case is before us once again. Appellants-petitioners Elizabeth Hanson, Bonnie Kuczkowski, and Bonnie Kuczkowski on behalf of Beverly Napier (collectively, the Appellants) appeal from the trial court's orders granting partial summary judgment in favor of appellees-respondents the Valma M. Hanson Revocable Trust (Trust) and Barry Bergstrom (collectively, the Appellees) and entering final judgment in favor of the Appellants on their negligence claim against Bergstrom.

The trial court made a sincere effort to comply with this court's previous opinion in this matter. However, although we recognize the trial court's efforts to comply with the language in that opinion, we must reverse and remand.

*FACTS*

The underlying facts, as described by the court in the first appeal of this matter, are as follows:

On December 2, 1983, in Illinois, Valma Hanson executed an instrument that established the Trust. Hanson named herself as the original Trustee, but later she named Bergstrom as Trustee by amendment in 1992. *Article Five* of the Trust instrument directed the Trustee to pay the various taxes payable upon her death. *Article Eight* created a separate "Trust B" and directed that after her death, Trust B of the "Trust as then constituted" was to be divided and distributed pursuant to the provisions of "Schedule 'C' " of the Trust. *Schedule C*, as amended in 1992, stated that the "Trust Estate as provided in Article Eight shall be divided and distributed" upon her death "as follows: 1. SPECIFIC DEVISE OF REAL ESTATE" then held in the Trust Estate was bequeathed to Bergstrom, and "2 .... the balance of the assets included in the Trust Estate as constituted" was to be divided according to specified percentages among nine individuals and one church. The Trust instrument also specified that the "Trust Agreement and the trusts created hereby shall be construed, regulated and governed by and in accordance with the laws of the State of Illinois."

On March 31, 1992, Hanson executed a last will and testament. In Article I of her will, she bequeathed all of her personal property to Bergstrom. In Article II, she exercised her testamentary power of appointment over the principal assets that were held in Trust A from her late husband's revocable trust to appoint Bergstrom and bequeath those assets to him. In Article III, the will provided the "GIFT OF RESIDUE TO TRUST," whereby "all the residue of [her] estate" was "give[n] and devise[d]" to Trust B of her Trust. The will named Bergstrom as executor thereof. Also, the will stated that Hanson was "a resident of Lake County, Indiana," and the will was to be "construed and interpreted under the laws of the State of which I am now a resident."

Hanson died on December 1, 1998. Indiana inheritance tax and Federal estate tax returns were filed, and the taxes and expenses were paid from the residuary assets of Trust B. Bergstrom allocated the payment of the taxes and expenses exclusively to the non-real estate assets in Schedule C and did not assess a contribution against the balance of the assets in Trust B, which included the devise of realty to Bergstrom. After Bergstrom had distributed to himself the real estate held by Hanson at the time of her death and paid the taxes and

expenses, no property was available for those identified to receive the specified percentage shares of "the balance of the assets" in Trust B.

On behalf of the residuary beneficiaries other than Bergstrom, the instant petition was filed, asserting that as Trustee, Bergstrom had violated the terms of the Trust by failing to apportion the federal estate tax and Indiana inheritance tax against all the property in Trust B. Petitioners asked that the Trust be docketed concerning "all issues with respect to the accounting and distribution of assets within the Trust," while also seeking the removal of Bergstrom and payment of attorney's fees.

Bergstrom filed a motion to dismiss, arguing that the petition failed to state a claim upon which relief could be granted. Specifically, Bergstrom contended that (1) the terms of the Trust authorized the payment of death taxes to be made at his discretion as Trustee, and (2) Indiana's statute on the apportionment of federal estate taxes was "inapplicable . . . because the trust agreement specifies the application of Illinois law, which has no similar rule on apportionment." The trial court denied Bergstrom's motion to dismiss, finding that the petition "states a claim on which relief can be granted because the Trust Agreement, as amended, should not be interpreted to permit payment of all death taxes from the residuary of the Trust."

*In re The Valma M. Hanson Revocable Trust No. 103–83–1,* 779 N.E.2d 1218, 1219–20 (Ind.Ct.App.2002) (emphases added) (citations and footnotes omitted), *trans. denied.* Article Five of the Trust requires that, following Hanson's death, all expenses and tax payments

*shall be charged generally against the principal of the Trust Estate* includable in the Settlor's Estate for federal estate tax purposes and any interest so paid shall be charged generally against the income thereof, provided, however, any such payments of estate, inheritance, succession, death or similar taxes shall be charged against the principal constituting Trust "B" and any interest so paid shall be charged against the income thereof.

Appellants' App. p. 196 (emphasis added).

In *Hanson,* Bergstrom appealed the trial court's denial of his motion to dismiss. This court affirmed the denial, concluding that the Appellants had properly stated a cause of action against Bergstrom. Furthermore, we ruled that Article Five of the Trust required that the federal estate tax and Indiana inheritance tax be apportioned over the entire value of Trust B of the Trust. 779 N.E.2d at 1223. We also noted that the Appellants had failed to assert in their petition the issue of expense apportionment, finding that they had only raised the issue of tax payment apportionment.

On September 9, 2003, Bergstrom made offers of judgment to Hanson and Kuczkowski, each in the amount of $18,580.25 less 15% of costs and attorney fees. Hanson and Kuczkowski rejected the respective offers. On March 22, 2004, Bergstrom filed a motion for summary judgment, arguing that the trial court should "compute the apportionment of taxes and award the [Appellants] the amount that they would receive after the taxes are apportioned." Appellants' App. p. 30. That amount, as calculated by Bergstrom, was the same amount included in his offers of judgment, and was achieved after deducting legal expenses incurred by Bergstrom during the course of this litigation. The Appellants and Bergstrom disagreed about what assets comprised Trust B, with the Appel-

lants relying on dicta from *Hanson* for their calculation of the assets in Trust B.

On January 11, 2005, the trial court granted partial summary judgment in Bergstrom's favor, adopting his mathematical formula to determine the gross value of the Trust, the apportionment of federal estate tax and Indiana inheritance tax, and the resulting value of the Trust shares to which the Appellants were entitled. The trial court then ordered Bergstrom to pay to the Appellants "their net share of Trust B assets pursuant to [Bergstrom's] formulas submitted to this court." Appellants' App. p. 19. The court reserved for a future date any determination regarding attorney fees, prejudgment interest, and whether Trust administrative expenses were required to be apportioned.

On July 26, 2005, the trial court issued its final order on the reserved issues, finding that Bergstrom was negligent and failed to administer the Trust according to its terms. The court further ordered as follows:

1. [Bergstrom] shall pay to [the Appellants] interest on $40,745.75 in the amount of 8% from November 22, 2000[,] until the whatever [sic] date is ten days after the [Appellants] received the Offer of Judgment.

2. [Bergstrom] shall pay [the Appellants] $25,000 as compensation for attorney's fees incurred by [the Appellants].

3. [The Appellants'] claims for reapportionment of expenses is denied as is [Bergstrom's] claim for attorney fees.

Appellants' App. p. 24. The Appellants now appeal from the trial court's partial summary judgment and final judgment orders.

*DISCUSSION AND DECISION*

The Appellants argue that the trial court erred in: (1) refusing to require Bergstrom to apportion Trust administrative expenses over all of the assets of Trust B; (2) awarding Bergstrom attorney fees and permitting those fees to be deducted directly from the Appellants' trust shares; (3) improperly calculating the amount of prejudgment interest owed to · them by Bergstrom; and (4) awarding the Appellants less than fifty percent of their requested attorney fees.

## I. Reapportionment of Trust Administrative Expenses

The Appellants first argue that the trial court erred in· denying their claim to apportion the Trust administrative expenses over all of Trust B. In particular, they argue that Article Five of the Trust requires that the trustee—Bergstrom—apportion Trust administrative expenses in precisely the same way that tax payments are apportioned. Because we found in *Hanson* that the federal estate tax and Indiana inheritance tax must be apportioned over the entire value of Trust B of the Trust, 779 N.E.2d at 1223, the Appellants reason that the same rule must be applied to the Trust administrative expenses.

In *Hanson*, we remarked that the Appellants' petition contained "only the assertion that [Bergstrom] failed to apportion taxes." Id. at 1220 n. 2. More specifically, we went on to comment as follows:

In their brief to the trial court opposing the motion to dismiss and in their appellate brief, [the Appellants] asserted that the expenses of administration should also have been so apportioned. However, no such assertion was presented to the trial court in [the Appellants'] amended petition for docketing of the Trust.

*Id.* at 1221 n. 3. Following *Hanson,* the Appellants raised the argument to the trial court that the Trust administrative expenses should be apportioned pursuant to Article Five. In considering and ruling on this argument, the trial court reasoned as follows:

> After reading the ... Trust, it seems ... that if the Appellate Court finds that the terms of the Trust demanded an apportionment of death taxes over all of the trusts [sic] assets ... that the Appellate Court would also find that expenses of administration should similarly be apportioned. However, in footnotes [2] and [3] of *[Hanson],* the Appellate Court states that the [Appellants] failed to assert in their Petition the issue of expense apportionment and that only the issue of apportionment of taxes was asserted.

> [The Appellants] could argue that these footnotes were part of the Appellate Court's *discussion* and that they were not part of its *decision.* That argument would fall on sympathetic ears in this Court. Yet the Appellate Court apparently read the Amended Petition, then, in a published opinion, twice took the time to volunteer the determination that [the Appellants] failed to raise the issue of apportionment of expenses. With such effort on their part, this Court will follow their lead by finding that a reapportionment of trust expenses of administration was not an issue properly raised in [the Appellants'] amended petition.

Appellants' App. p. 21–22 (emphases in original).

▆▆▆ It is apparent from the trial court's analysis on this issue that it was striving to comply with the language contained in footnote three of *Hanson.* However, in its attempt to comply with this court's apparent directive in *Hanson,* the trial court arrived at an improper result.

▆▆▆ Essentially, the trial court's ruling on this issue was premised on the law of the case doctrine. The law of the case doctrine is a discretionary tool by which appellate courts decline to revisit legal issues already determined on appeal in the same case and on substantially similar facts. *Godby v. Whitehead,* 837 N.E.2d 146, 152 (Ind.Ct.App.2005), *trans. denied.* To invoke the law of the case doctrine, the matters decided in the prior appeal clearly must appear to be the only possible construction of an opinion, and questions not conclusively decided in the prior appeal do not become the law of the case. Id. Statements that are not necessary in the determination of the issues presented are dicta, are not binding, and do not become the law of the case. *Watters v. Dinn,* 666 N.E.2d 433, 436 (Ind.Ct.App.1996).

Bergstrom was the appellant in *Hanson,* and the specific issues that he raised on appeal concerned only the apportionment of tax payments. He did not request that we analyze the apportionment of Trust administrative expenses. Consequently, our statements in footnotes two and three regarding the Appellants' failure to raise administrative expenses in their amended petition were not necessary to determine the issues presented on appeal and, therefore, are not the law of the case.

▆▆▆ That being said, however, Bergstrom argues that he did not include the apportionment of Trust administrative expenses as one of the issues on appeal because the Appellants' amended petition did not, in fact, raise the apportionment of those expenses. Indeed, the petition focuses entirely on the apportionment of federal and State taxes, including a paragraph stating that "since the payment of the federal estate and Indiana inheritance taxes ..., the proceeds of the ... Trust have

been fully administered and distribution of the proceeds of said Trust to the beneficiaries was appropriate." Appellants' App. p. 189. The Appellants direct our attention to the portion of the amended petition's request for relief asking that the trial court "issue its order requiring that the [Trust] be docketed with the Court and that all issues with respect to the accounting and distribution of assets within the Trust be subject to the jurisdiction of the Court." *Id.* p. 192.

Although the amended petition is regrettably vague and fails to mention administrative expenses specifically, we conclude that the Appellants sufficiently raised the issue in its final "catch-all" request for relief. Moreover, the Appellants explicitly raised the apportionment of administrative expenses in their briefs responding to Bergstrom's motion to dismiss and motion for summary judgment. Indeed, in Bergstrom's reply brief on his motion to dismiss, he specifically mentions apportionment of Trust administrative expenses a number of times. Appellants' App. p. 258–67. We must conclude, therefore, that Bergstrom was sufficiently on notice that the apportionment of administrative expenses was included in the arguments raised by the Appellants.

■ Turning to the merits of the argument regarding apportionment of Trust administrative expenses, we observe that in *Hanson,* we concluded that Article Five required that all federal and State tax payments be apportioned across all of the assets in Trust B. 779 N.E.2d at 1223. Inasmuch as Article Five makes no distinction between the apportionment of Trust administrative expenses and that of tax payments, we are compelled to conclude that Article Five requires that all Trust administrative expenses be apportioned across all of the assets in Trust B, not just those going to the remaining beneficiaries. Thus, we conclude that the trial court erred in declining to order that the Trust administrative expenses be apportioned across all of the assets in Trust B. We remand this cause to the trial court for a calculation of money owed to the Appellants following the apportionment of the Trust administrative expenses across all of the assets in Trust B.

## II. Bergstrom's Attorney Fees

■ The Appellants next argue that the trial court erred in permitting Bergstrom to collect attorney fees by deducting the amount of those fees from the distribution checks he paid to them following the trial court's order to properly apportion the tax payments.[1] The award or denial of attorney fees is within the sound discretion of the trial court, and in the absence of error or an abuse of that discretion, we must affirm the trial court's decision. *Malachowski v. Bank One,* 682 N.E.2d 530, 533 (Ind.1997).

To properly analyze this argument, it is helpful to set forth and describe a timeline of the salient events. On March 22, 2004, Bergstrom filed a motion for summary judgment that included a suggested formula for the apportionment of federal and State tax payments as required by *Hanson.* Essentially, the formula apportions a percentage of the tax payments to each

1. Bergstrom includes a section in his brief essentially arguing that there has never been a finding that he breached a fiduciary duty to the Appellants. The logical follow-up to that argument would be that the trial court erred in awarding *any* attorney fees to the Appellants. But Bergstrom does not cross-appeal the order, and, indeed, asks us to affirm the trial court. Consequently, we will not address whether the Appellants are entitled to receive any attorney fees and will instead focus solely on the propriety of the amount of the fee award.

Trust share based on the size of the share in relation to the Trust assets as a whole. Appellants' App. p. 308–09. Included in the summary of Bergstrom's suggested apportionment is a category called "Share of Atty Fee & Cost" that is not explained or accounted for elsewhere in the summary judgment brief. *Id.* p. 309. In that column, Bergstrom apportioned $3,037.54 in attorney fees to each of the shares of Hanson and Kuczkowski with no accompanying documentation to substantiate that figure.

On January 11, 2005, the trial court granted partial summary judgment in Bergstrom's favor, finding that Bergstrom's formula "for apportioning the assets and tax liability" among Bergstrom and the Appellants was correct. *Id.* p. 19. The trial court's order did not include any specific dollar amounts, nor did it address attorney fees. The order also explicitly reserved all remaining issues for its future consideration.

On March 18, 2005, Bergstrom submitted an affidavit regarding the attorney fees he had incurred since September 9, 2003, when he made the offer of judgment to the Appellants. According to Bergstrom, his attorney fees and costs totaled $15,213.00. *Id.* p. 363. On April 12, 2005, Bergstrom distributed checks to each of the three Appellants. The distribution resulted from the apportionment of the tax payments across the entire Trust according to the formula approved by the trial court on January 11. Based on the amount of the checks, Bergstrom withheld attorney fees and costs in the amount of $5,319.49 from each of the distribution checks to Hanson and Kuczkowski, and $2,659.74 from the distribution check to Napier. Appellant's Br. p. 22. Thus,

Bergstrom reimbursed himself for attorney fees and costs in the total amount of $13,298.72.

■ The Appellants accepted the checks and, later realizing that Bergstrom had withheld the attorney fees, brought it to the trial court's attention at a hearing on June 1, 2005.[2] At the hearing, the trial court observed that "I do recall that my formula was on the taxes. It did not include any reimbursement for—a deduction for attorney's fees. I do recall that because I was only on the taxes." Appellant's App. p. 112.

The trial court issued a final order on July 26, 2005, in which it determined, among other things, that the Appellants were entitled to attorney fees because Bergstrom

> was negligent in not carrying out the terms of the trust as read by the Appellate Court and also in not recognizing the need to seek Court guidance under IC 30–4–3–5. It would be hard then not to justify an award of attorneys fees when the services of an attorney were clearly needed to right the wrong caused by the Trustee at the expense of the beneficiaries.

Appellants' App. p. 23. The court went on to determine that "no [attorney] fee should be awarded [Bergstrom] for his attorneys and that the attorneys fees deducted from the payment to [the Appellants] in April is adequate recompense for Respondent." *Id.* p. 24. Thus, the trial court denied Bergstrom's claim for attorney fees.

■ Initially, we observe that we cannot determine from the record whether the amount that Bergstrom withheld from the distribution checks—a total of $13,298.72—

---

2. Bergstrom argues that the Appellants have waived this argument by accepting the checks and failing to file a formal petition, but we conclude that they sufficiently preserved the issue by raising it during the June 1 hearing.

constitutes a portion of the $15,213 requested in his affidavit or is in addition to that amount. Whatever the answer, Bergstrom has offered no evidence supporting the figure of $13,298.72.

Furthermore, we note the internal inconsistencies of the trial court's order—it concludes that Bergstrom was negligent, awards the Appellants attorney fees because they were needed to right Bergstrom's wrong, determines that Bergstrom is not entitled to attorney fees, and then approves of Bergstrom's action in withholding his unsubstantiated attorney fees from the distribution checks to the Appellants, notwithstanding the trial court's own prior comment that the formula did not include attorney fees.

Given the trial court's conclusions that Bergstrom was negligent and that the Appellants are entitled to attorney fees, we can only find that Bergstrom is not, and never has been, entitled to attorney fees. There is no logical reason to permit Bergstrom to withhold his attorney fees from the distribution checks when the trial court, in the end, determined that Bergstrom is not entitled to attorney fees.[3] Thus, Bergstrom was erroneously permitted to withhold $13,298.72 from the Appellants and is hereby directed to pay $5,319.49 to each of Hanson and Kuczkowski and $2,659.74 to Napier.[4]

### III. Prejudgment Interest

The Appellants next argue that the trial court erred in calculating the amount of prejudgment interest owed to them by Bergstrom. In particular, they contend that the trial court erred in applying the Indiana Tort Prejudgment Interest statute, Indiana Code chapter 34–51–4, to a non-tort cause of action. Additionally, they argue that when the common law standard for prejudgment interest is applied to this case, it is apparent that Bergstrom should have to pay prejudgment interest for the entire time that the Appellants have been without the full amount due to them as Trust shares.

Turning first to the Tort Prejudgment Interest Statute, we note that, unsurprisingly, it "applies to any civil action arising out of tortious conduct." Ind.Code § 34–51–4–1. In passing this statute, the legislature "intended to preempt common law prejudgment interest in *tort cases.*" *Simon Prop. Group, L.P. v. Brandt Constr., Inc.,* 830 N.E.2d 981, 994 (Ind.Ct. App.2005) (emphasis added), *trans. denied.* We have emphasized in the past that this statute applies to tort actions but not to other causes of action such as breach of contract. *Thor, Elec., Inc. v. Oberle & Assocs., Inc.,* 741 N.E.2d 373, 380 (Ind.Ct. App.2000).

This litigation arises from a "Petition for Docketing of the Valma M. Hanson Revocable Living Trust No. 102–83–1 and Removal of Trustee" that was filed by the Appellants. Appellants' App. p. 188. At the heart of the petition is an allegation that Bergstrom breached a fiduciary duty to the Appellants in the way in which he apportioned the Trust tax payments and administrative expenses. Thus, it is apparent to us that this is not a tort case. That the trial court stated in its order that

---

3. Bergstrom does not challenge that finding on cross-appeal, and we agree that the trial court did not abuse its discretion in determining that he is not entitled to attorney fees.

4. As an aside, we note that Bergstrom ensured that only the Trust shares owned by the Appellants paid for the full amount of his fees.

Even if Bergstrom were permitted to recover fees, he would have to apportion those fees over the entirety of the Trust according to the formula adopted by the trial court. Thus, Bergstrom would be responsible for 58.8% of the total fees and for 62.5% of the remainder. Appellant's App. p. 119–20.

Bergstrom was "negligent," *id.* p. 23, in carrying out his duties does not suddenly transform the Appellants' action into a tort as contemplated by the statute. We conclude, therefore, that the trial court erred in applying the Tort Prejudgment Interest Statute to this case.

The Appellants next argue that when the common law prejudgment interest standard is applied to this case, it becomes apparent that the trial court miscalculated the amount to which they are entitled. As we consider this argument, we observe that the crucial factor in determining whether damages in the form of prejudgment interest are allowable is whether the damages were ascertainable in accordance with fixed rules of evidence and accepted standards of valuation. *Thor Elec., Inc.,* 741 N.E.2d at 377. An award of prejudgment interest is proper only where a simple mathematical computation is required. *Id.; see also Hooker Builders, Inc. v. Smalley,* 691 N.E.2d 1256, 1258 (Ind.Ct.App.1998) (finding that "[d]amages are readily ascertainable where the trier of fact need not exercise its judgment to assess the amount of damages").

Here, Bergstrom does not argue that the Appellants are not entitled to prejudgment interest. Consequently, we must merely determine the amount to which they are entitled. The purpose of an award of prejudgment interest is to compensate the injured party for the lost use of money. *Sand Creek Country Club, Ltd. v. CSO Architects, Inc.,* 582 N.E.2d 872, 876 (Ind.Ct.App.1991). The trier of fact does not have to exercise its discretion in determining the amount of damages. *Id.*

Bergstrom made his final trust accounting on November 22, 2000, and we agree with the trial court that this is the date on which prejudgment interest began to accrue. The Appellants' damages—the value of their Trust shares—were readily ascertainable as of that time. The trial court went on, however, to conclude that the prejudgment interest should be tolled as of ten days after Bergstrom served his offer of judgment on the Appellants because "that offer was substantially similar to the actual amount awarded." Initially, we note that the offer was not substantially similar to the actual amount awarded, inasmuch as it made no offer at all to Napier, apportioned 15% of the court costs and attorney fees to each of Hanson and Kuczkowski, and did not include prejudgment interest or attorney fees for the Appellants.

Furthermore, we observe that the amount of prejudgment interest to be awarded was not within the trial court's discretion because the Appellants' damages were readily ascertainable. To fully recompense the Appellants for the lost time value of their money, we conclude that prejudgment interest on the apportioned federal and State tax payments began to accrue on November 22, 2000, and tolled on April 12, 2005, the date on which Bergstrom transmitted the checks to the Appellants.

As noted above, however, Bergstrom is also required to apportion the Trust administrative expenses across all of the assets in Trust B. Also as noted above, Bergstrom improperly withheld his attorney fees from the distribution checks. Consequently, prejudgment interest on the amount owed to each Appellant for the Trust administrative expenses and on the attorney fees he improperly withheld from the distribution checks—$5,319.49 to each of Hanson and Kuczkowski and $2,659.74 to Napier—began to accrue on November 22, 2000, and will toll on the date on which Bergstrom repays those amounts to the Appellants.

We remand to the trial court with instructions to calculate the amount of prejudgment interest, assessed at 8%, that is owed for: (1) the federal and State tax payments between the dates of September 19, 2003, and April 12, 2005; (2) the Trust administrative expenses between the dates of November 22, 2000, and the date on which Bergstrom repays those expenses to the Appellants; and (3) the attorney fees, in the amount of $5,319.49 to each of Hanson and Kuczkowski and $2,659.74 to Napier, between November 22, 2000, and the date on which Bergstrom repays that money to the Appellants.

### IV.   The Appellants' Attorney Fees

■ Finally, the Appellants argue that the trial court erred in calculating the amount of attorney fees to which they are entitled. They direct us to the trial court's order of July 26, 2005, in which it found that they are entitled to attorney fees because they needed the services of an attorney "to right the wrong caused by" Bergstrom at their expense. Appellants' App. p. 23. The trial court went on, however, to reduce the amount of the award from their requested $55,368 to $25,000, finding that the requested fees were excessive for the following reasons: (1) the amount exceeds the amount ultimately recovered, which was $40,745.75; (2) the hourly rate charged by Appellants' attorney—$175—exceeds the amount allowed by the published guidelines of Lake County; (3) many of the charges were for time spent that was unnecessary for the relief allowed; (4) there was no written agreement "to corroborate the terms counsel has alleged were agreed upon"; (5) "there is the Offer of Judgment issue"; and (6) there was insufficient testimony by Kuczkowski "to suggest she understood that her counsel was charging her on a quarter/hour basis." *Id.*

■ In determining the reasonableness of an attorney fee award, the trial court should consider

> "not merely the result, but whether the trustees are acting reasonably and in good faith, whether the issue on which they are divided is of little or momentous consequence to the estate or its beneficiaries, whether the facts are undisputed or are so controversial as to require an adversary proceeding for their determination, whether the legal questions are simple or complex, settled by precedents or open to serious debate, and any other matters that bear upon the reasonableness or the necessity for the litigation and the multiple employment of attorneys therein."

*Malachowski*, 682 N.E.2d at 533 (quoting *Zaring v. Zaring*, 219 Ind. 514, 523, 39 N.E.2d 734, 737 (1942)).

### A.   Amount Recovered

■ Turning to the trial court's first rationale for reducing the requested amount of the Appellants' attorney fees, we again observe that " '[t]he right to compensation at the cost of the estate should not depend upon the result of the litigation but rather upon the reasonable necessity for such litigation.' " *Id.* It is apparent, therefore, that the amount of the recovery should have no impact on the amount of attorney fees to which the Appellants are entitled. Of more importance is whether the litigation was necessary, and inasmuch as the trial court explicitly concluded that "the services of an attorney were clearly needed to right [Bergstrom's] wrong," appellants' app. p. 23, the amount of the award recovered by the Appellants should not have factored into the trial court's evaluation of the attorney fee request.

### B.   Hourly Rate

Next, the trial court was troubled by the fact that the Appellants' attorney charged

an hourly rate of $175, which the trial court found exceeded the amount allowed by the Lake County guidelines. Our review of the Local Rules of Lake County for Circuit and Superior Courts (Probate and Estates), however, reveals that "[f]ees *will not be determined by the Court in Trust matters,* other than at the discretion of the Court for services actually rendered in Court proceedings." Lake County Circuit and Superior Courts (Probate and Estate), Probate and Estates—General Rules, *at* http://www.in.gov/judiciary/ local-rules/current/lake(estate)–081205.pdf (last visited August 7, 2006) (emphasis added).

While it is within the trial court's discretion to conclude that an hourly rate of $175 is improper under these circumstances, it incorrectly concluded that it was required to do so pursuant to the local rules. Although the rules provide that the hourly rate of attorneys handling estate and guardianships matters should be $125, there is no such restriction for attorneys handling trust matters. *Id.* Other than this inapplicable guideline, there is no argument or suggestion by Bergstrom or the trial court that an hourly rate of $175 is excessive or unreasonable for Lake County. We remand, therefore, with instructions that the trial court explain whether and, if so, why an hourly rate of $175 is unreasonable in this case. If the trial court concludes that $175 is an unreasonable hourly rate, it must make a clear deduction from the requested fee award of the amount exceeding the reasonable hourly rate.

### C. Unnecessary Legal Work

The next reason given by the trial court for reducing the Appellants' requested attorney fee award was because many of the charges were "for time spent that was unnecessary for the relief allowed...." Appellants' App. p. 24. The Appellants concede that their attorney may have spent more time than necessary on certain tasks, but complain that because the trial court failed to specify what legal time was unnecessary in making its ruling, it is impossible for us to evaluate the reasonableness of its calculation.

After going through all of the possible areas of legal work, the Appellants insist that at most, a deduction of only 26.25 hours is warranted. Appellants' Br. p. 35–38. After deducting 26.25 hours from 314.75 hours, the remaining legal time would be 288.5 hours. At an hourly rate of $175, the maximum reduction would be $4,593.75, leaving a total of $50,487.50—not $25,000, the figure at which the trial court arrived.

While the amount of a fee award is certainly within the sound discretion of the trial court, the amount of the trial court's award of attorney's fees must nonetheless be supported by the evidence. *Franklin College v. Turner,* 844 N.E.2d 99, 105 (Ind.Ct.App.2006). Here, the trial court provided no transparency as to the basis of its reduction of the attorney fee award. *Cf. id.* (upholding trial court's reduction of requested attorney fee award where trial court explicitly estimated the time the attorney properly spent on the matter, considered the difficulty of the area of legal practice, and noted what it believed to be a reasonable hourly rate, calculating the fee award based upon those explicit criteria). Therefore, while we do not conclude that the trial court abused its discretion in finding that the Appellants' attorney spent unnecessary time on this litigation, we remand for the trial court to make a clearer calculation of and deduction from the requested fee award based upon the time that it determines was unnecessarily spent.

### D. Absence of a Written Fee Agreement

Next, the trial court reasoned that the absence of a written fee agreement be-

tween the Appellants and their attorney supported the reduction of their requested fee ·award because nothing existed "to corroborate· the terms counsel has alleged were agreed upon...." Appellants' App. p. 24.

■ We are unable to find any authority supporting the proposition that the absence of a written fee agreement precludes an attorney fee award or supports a reduction in the requested award. Indiana Professional Rule of Conduct 1.5 requires that a *contingent fee agreement* must be in writing, but does not require that an attorney who charges an hourly rate—as in this case—must execute a written fee agreement with his clients. Furthermore, attorney fees may be acceptable under a quantum meruit theory even in the case of an oral contingent fee agreement. *Major v. OEC–Diasonics, Inc.,* 743 N.E.2d 276, 282 (Ind.Ct.App.2001). Under these circumstances, we are compelled to conclude that the trial court improperly relied upon the absence of a written fee agreement as support for its reduction of the Appellants' requested fee award.

### E.   Offer of Judgment

The next rationale offered by the trial court in support of its reduction of the requested fee award is "the Offer of Judgment issue," upon which it does not elaborate. Appellants' App. p. 24. We can only conclude that the trial court was relying upon Indiana Trial Rule 68 in reducing the fee award as the result of the Appellants' refusal of Bergstrom's offer of judgment. Trial Rule 68 provides, in pertinent part, that if the offeree refuses the offer and if "the judgment finally obtained by the offeree is not more favorable than the offer,

the offeree must pay the *costs* incurred after the making of the offer."[5]

■ Trial Rule 68, however, affects only the *costs* incurred by the offeror and is silent with respect to the offeror's *attorney fees.* Indeed, attorney fees are not generally included within the meaning of the word "costs." *Ingram v. Key,* 600 N.E.2d 95, 95–96 (Ind.1992) (summarily affirming Court of Appeals decision holding that attorney fees are not recoverable as costs under Trial Rule 68); *Muenich v. Gulden,* 579 N.E.2d 665, 666 n. 2 (Ind.Ct. App.1991). Moreover, we have explicitly held that even litigation costs are not recoverable pursuant to Trial Rule 68 given the narrow statutory definition of "costs." *Missi v. CCC Custom Kitchens, Inc.,* 731 N.E.2d 1037, 1039–40 (Ind.Ct.App.2000). Thus, the trial court erroneously relied upon the Appellants' rejection of Bergstrom's offer of judgment as a basis for its reduction of the Appellants' requested attorney fees.

### F.   Client's Understanding of Fee Arrangement

The trial court also relied upon the following rationale to support its reduction of the Appellants' fee request: "there was insufficient testimony by ... Kuczkowski to suggest she understood that her counsel was charging her on a quarter/hour basis." Appellants' App. p. 24. We are hard-pressed to understand how Kuczkowski's comprehension of her attorney's fee structure is relevant to any of the *Malachowski* criteria. Furthermore, we are unable to find any authority supporting the proposition that a reduction in attorney fees is warranted if the client did not understand the way in which her attorney was charging his fees.

---

**5.** We again emphasize that, as noted above, the judgment obtained by the Appellants was

more favorable than Bergstrom's offer.

Moreover, after examining the record, it is clear that when Kuczkowski testified regarding her attorney, she was never asked to discuss—and, indeed, never testified regarding—the fact that her attorney's fees were being charged in quarter-hour increments. Appellants' App. p. 128–31. Therefore, even if Kuczkowski's understanding is remotely relevant to this issue, there is no evidence in the record supporting a conclusion that she did not understand how her attorney's fees were being calculated. Additionally, we note the presence of undisputed evidence showing Kuczkowski's receipt of monthly billing statements from her attorney over five years of litigation, with each bill reflecting calculations in quarter-hour increments. *Id.* p. 132–33. Thus, the only evidence in the record on this issue leads us to infer that Kuczkowski did, in fact, understand the way in which her attorney was calculating his fees.

We must conclude, therefore, that Kuczkowski's understanding of the increments of time in which her attorney billed his fees is not relevant to a determination of the reasonableness of the fee award and that, even if her understanding is relevant, the only evidence in the record tends to establish that she did, in fact, understand that she was being billed in quarter-hour increments. Thus, the trial court improperly relied upon this factor as a basis for reducing Appellants' requested attorney fees.

### G. Attorney Fees of Appellants' Prior Counsel

The Appellants also requested that they be reimbursed for attorney fees in the amount of $4,170, which they incurred before they began to be represented by the attorney who litigated the vast majority of this case. The record contains an affidavit and canceled checks supporting the amount of their request, but we cannot glean from the record whether this prior representation was actually a part of this litigation or was separate and distinct from this litigation. The trial court ignored this request in its final order. Therefore, we remand to the trial court with instructions to explicitly determine whether the Appellants are entitled to the requested legal fees in the amount of $4,170.

In sum, we have concluded that the trial court improperly concluded that the local rules compelled it to conclude that an hourly rate of $175 is unreasonable. It is within its discretion to make such a conclusion, however, and we therefore remand with instructions to explain whether and, if so, why an hourly rate of $175 is unreasonable in this case. Aside from the hourly rate, only one of the bases upon which the trial court relied in reducing the requested fee award—the possible inclusion of unnecessary legal work—is a proper rationale. We have further determined that the trial court must make a clearer calculation of and deduction from the requested fee award based upon the time that it determines was unnecessarily spent, and remand for that purpose. We also remand with instructions to determine whether the Appellants are entitled to their additional request for attorney fees in the amount of $4,170.

### CONCLUSION

In considering the Appellants' arguments, we have arrived at the following conclusions: (1) Bergstrom is required to apportion the Trust administrative expenses over all of the assets of Trust B; (2) Bergstrom is not entitled to attorney fees and improperly withheld attorney fees from the distribution checks to the Appellants; (3) the trial court improperly calculated the amount of prejudgment interest owed to the Appellants; and (4) the trial

court improperly calculated the amount of attorney fees owed to the Appellants.

We reverse the judgment of the trial court and remand with the following instructions:

(1) calculate the amount of money owed to the Appellants as a result of the apportionment of the Trust administrative expenses over all of the assets of Trust B;

(2) enter an order requiring Bergstrom to pay $5,319.49 to each of Hanson and Kuczkowski and $2,659.74 to Napier, representing the attorney fees he improperly withheld from the distribution checks to the Appellants;

(3) calculate the amount of prejudgment interest, assessed at 8%, that is owed for:

  (a) the tax payments between the dates of September 19, 2003, and April 12, 2005;

  (b) the Trust administrative expenses between the dates of November 22, 2000, and the date on which Bergstrom repays those expenses to the Appellants; and

  (c) the attorney fees, in the amount of $5,319.49 to each of Hanson and Kuczkowski and $2,659.74 to Napier, between November 22, 2000, and the date on which Bergstrom repays that money to the Appellants;

(4) explain whether and, if so, why an hourly rate of $175 is unreasonable in this case, and if the trial court determines that $175 is unreasonable, it must make a clear deduction from the requested fee award of the amount exceeding the reasonable hourly rate;

(5) make a clearer calculation of and deduction from the Appellants' requested attorney fee award based upon the time that the trial court de-termines the Appellants' attorney spent on unnecessary legal work; and

(6) determine whether the Appellants are entitled to their additional request for attorney fees in the amount of $4,170.

MAY, J., concurs.

SULLIVAN, J., concurs as to Parts II and III and concurs in result as to Parts I and IV.