Terry GERSTBAUER and Capitol
Speedway, Inc., Appellants–
Defendants,

v.

Stephen W. STYERS, Appellee–
Plaintiff.

No. 50A03–0707–CV–340.

Court of Appeals of Indiana.

Dec. 18, 2008.

Peyton L. Berg, Bose McKinney & Evans LLP, Indianapolis, IN, Attorney for Appellant.

Philip E. Kalamaros, Hunt Suedhoff Kalamaros LLP, Saint Joseph, MI, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Terry P. Gerstbauer and Capitol Speedway, Inc. ("Capitol" ') appeal from the trial

court's order on attorneys' fees. They raise three issues for our review, which we consolidate and restate as whether the trial court abused its discretion in determining the reasonableness of Gerstbauer and Capitol's attorneys' fees. On cross-appeal, Stephen W. Styers also challenges the trial court's award of fees as well as its judgment that he cannot recover on his statutory trespass claim.

We affirm in part and reverse and remand in part.

### FACTS AND PROCEDURAL HISTORY

The facts relevant to this appeal were stated in our prior memorandum decision in *Capitol Speedway, Inc. v. Styers*, 837 N.E.2d 229, No. 50A03–0409–CV–390, at 2–6 (Ind.Ct.App. Oct. 26, 2005) ("*Capitol Speedway I* "), aff'd on reh'g (Feb. 16, 2006) ("*Capitol Speedway II* "):

> Gerstbauer purchased a racetrack in Plymouth in the fall of 1994 and formed Capitol within one month after his acquisition of the racetrack. Gerstbauer is the president and sole shareholder of Capitol. Following the formation of Capitol, Gerstbauer leased the racetrack to Capitol, and Capitol made regular lease payments to Gerstbauer.
>
> On April 3, 1998, Gerstbauer, as president of "A new Corporation to be formed," and Styers, as president of Plymouth Motor Speedway, Inc. ("Plymouth"), entered into a three-year lease agreement for the racetrack. The agreement required Styers to pay $12,000 upon execution of the lease, which he did, and an additional $90,000 in regular rental payments from July 5, 1998, through September 6, 2000, for a total of $102,000. In addition, the lease granted Styers an option to purchase the racetrack for $300,000 at any time during the course of the lease. Impor-

tantly, the lease also contained a section describing Gerstbauer's remedies upon Styers' default. Specifically, that section provides in relevant part that:

> Upon the occurrence of any Event of Default Landlord may, at its option, in addition to any other remedy or right it has hereunder or by law:
>
> (1) Re-enter the Leased Property, without demand or notice, and resume possession by an action in law or equity or by force or otherwise and without being liable in trespass or for any damages and without terminating this Lease. Landlord may remove all persons and property from the Leased Property and such property may be removed and stored at the cost of Tenant.

On July 5, 1998, the day that the first of the regular rent payments was due, Styers informed Gerstbauer that the "necessary funds were not immediately available" and he indicated a desire to negotiate a modification. The parties agree that they did orally modify their agreement, but they disagree on the exact terms of the modification. Styers maintains that the new payment schedule required him to pay $1,692.31 each week in which an event occurred at the track. Conversely, Gerstbauer claims that the modification required Styers to pay $1,692.31 each week for thirteen weeks and make a "balloon payment on November 1, to catch up the entire balance of the lease payments due."

Thereafter, Styers made nine rent payments to Gerstbauer, but failed to make any payments after September 14, 1998. Gerstbauer became concerned about the non-payments and received information from vendors and others that Styers was not current with his bills. Subsequently, Gerstbauer declared the "contract

forfeited and seized possession of the property." Then, on October 12, 1998, Styers demanded that Gerstbauer return his property. Gerstbauer refused and, at the time of this appeal, still retained Styers' property in storage.

On October 30, 1998, Styers filed a complaint against Gerstbauer, which principally alleged breach of quiet enjoyment, trespass, and conversion. Gerstbauer claimed that Styers had improperly sued Gerstbauer in his individual capacity. Consequently, Gerstbauer answered and filed a counterclaim on behalf of Capitol and claimed that Styers had breached the lease. Styers then filed an amended complaint and named Gerstbauer and Capitol as defendants. Prior to trial, both parties filed numerous motions to compel discovery. Styers also sought discovery sanctions against Gerstbauer, and Gerstbauer filed one motion for discovery sanctions against Styers. In response to Styers' motion for sanctions, the trial court pierced the corporate veil on the stated grounds that Gerstbauer had failed to "provide meaningful discovery response in spite of numerous requests and Motions to Compel for the production of materials pertaining to the financial activities of Capitol Speedway, Inc. and Terry Gerstbauer."

Following a bench trial, the trial court entered findings and conclusions. Ultimately, the trial court agreed with Gerstbauer that payments were due each week for thirteen weeks, regardless of whether an event occurred at the track. In particular, the court noted, "the parties acted as if Gerstbauer's concept of the contract was the one in place. In either event, Styers materially breached the contract by failing to make the payments timely."

Nevertheless, the trial court ruled against Gerstbauer on his counterclaim for breach of the lease agreement, in effect, holding that since Gerstbauer had sold the real estate for more than the option price, he had come out "ahead" and had not been damaged by Styers' breach of the lease. The trial court also concluded that Gerstbauer had "improperly and illegally converted personal property of Styers, still having not returned it, which the Court values at $27,476." The court elaborated, stating that, "[n]othing in the contract gives Gerstbauer even a colorable claim to keep Styers' personal property and the Court finds that Styers had an immediate and unqualified right to possession." Therefore, the trial court awarded "treble damages [against both Capitol and Gerstbauer] totaling $82,428, attorney fees in the sum of $22,750 and sanctions of $1,400 all plus the costs of the action." In addition, the court imposed prejudgment interest on the amount of $82,428 at the rate of 8% from October 12, 1998, until paid. This appeal ensued.

(Footnotes and citations to the record omitted.)

More specifically, the trial court's original order stated, in relevant part, as follows:

1.  .... The contract ... is an otherwise generally normal contract for a lease purchase....

* * *

7.  The fair market value of the personal property was identified by Styers ... and the Court heard virtually no separate evidence upon that topic....

* * *

13. Styers filed his suit and, after an amendment of the complaint, ultimately has alleged nine paragraphs of complaint against Gerstbauer.

Paragraph I alleges a violation of a breach of the contract term for quiet enjoyment. Paragraph II alleges trespass. Paragraph III alleges a common law conversion of the personalty. Paragraph IV alleges tortious interference with the personalty and, depending upon how the provision is read, with the realty. Paragraph V alleges exercise of unauthorized control and wrongfully depriving the plaintiff of the personalty, and depending upon how the complaint is read, the realty. Paragraph VI alleges a violation of the Indiana statute upon conversion of personalty authorizing treble damages and attorney fees. Paragraph VII alleges unjust enrichment based upon Gerstbauer's wrongful ejectment and seizure of the improvements made upon the property. Plaintiff's Paragraph VIII alleges that Gerstbauer wasted the property by damaging it on October 8 (a claim the plaintiff apparently withdrew in that no evidence in support of it was submitted). Paragraph IX alleges all of the same complaints against [Capitol], noting that the business relationship between the individual and the Corporation were so co-mingled that both should be jointly responsible.

14. Because the Court finds that Gerstbauer was entitled to repossession of his land, forfeiting the contract because of Styers' failure to make payments timely, the Court finds against Styers as to paragraph I and paragraph II of his complaint for violating his rights of possession. The Court ... finds in favor of Styers for conversion of the personalty under paragraphs III, IV, V, and VI, but not for tortious interference or unauthorized control over the realty under paragraphs V and VI. The Court finds that there is no unjust enrichment as described in paragraph VII of the complaint in that repossession of the real estate was Gerstbauer's right. The Court heard no evidence in support of paragraph VIII and the Court additionally describes its earlier grant of paragraph IX that the award is joint against not only Gerstbauer but also [Capitol].

15. Defendant Gerstbauer counter-claimed in four paragraphs. At paragraph I, he alleged Styers' breach of the contract and his entitlement to money damages. At paragraph II, he alleged slander of title ... At paragraph III, he alleged waste upon the real estate and at paragraph IV, he alleged abuse of process by virtue of the *lis pendens* notice.

* * *

18. Gerstbauer's credibility was always in issue in this case and counsel for Styers quite successfully impeached Gerstbauer, confronting him with signed documents that he denied existed and with testimony concerning cash side-transactions concerning his resale of the property, a profit when he was claiming a loss. The Court has received significant disputes prior to trial concerning discovery problems where counsel for plaintiff alleged that Gerstbauer was not producing materials, dramatically increasing the costs of discovery. In particular, counsel was able to point to the lack of information concerning the management of the track when

Gerstbauer was its general manager, an indication that Gerstbauer had not produced financial records concerning it (for instance there was no record of utility payments). Other allegations against Gerstbauer not being forthcoming could not be substantiated until trial when Gerstbauer was confronted with documents that he had denied existed and clear testimony was heard from other businessmen who dealt with Gerstbauer concerning the true nature of his later sale. The Court had ruled that those requests for sanctions would simply abide the event of the trial. Accordingly, the Court's findings here include these statements concerning his willful discovery failures made to support the Court's award of an additional $1750 in attorney fees as a sanction for discovery failures (as noted in the Court's judgment, Styers is substantially recovering his attorney fees, pro rated to reflect his recovery on personal property issues but not on the recovery of his option to purchase the track, all based upon the Court's finding that Styers breached the contract, not Gerstbauer). By way of comparison little additional information was received concerning Styers' attorney's failure to notify Gerstbauer's attorney concerning the calling off of a deposition, it clearly being an act of retribution for earlier discovery failures by Gerstbauer (not the attorney). The Court deems the $350 attorney fee award for this breakdown in professionalism as an appropriate response; it was also to abide the event.

Appellants' App. at 156–62.

On appeal, this court framed the issues as: (1) "[w]hether the trial court erred when it concluded that Gerstbauer exerted unauthorized control of Styers' personal property"; (2) "[w]hether the trial court abused its discretion when it pierced the corporate veil as a discovery sanction"; and (3) "[w]hether the trial court erred when it held that Gerstbauer was not entitled to damages for Styers' breach of the lease." *Capitol Speedway I* at 2. On Issue One, we held that the trial court's judgment was clearly erroneous in light of the section of the lease describing Gerstbauer's remedies upon Styers' default. Because of our holding on Issue One, we did not reach the merits of Issue Two, although we noted that the trial court did not mention the traditional factors used to pierce the corporate veil. *Id.* at 14–15 (discussing *Aronson v. Price,* 644 N.E.2d 864, 867 (Ind.1994)). And on Issue Three, we held that the trial court's judgment regarding damages was clearly erroneous. Specifically, we noted that the lease contained a savings clause "expressly providing that termination shall not affect the accrual of liability for rent," contrary to the trial court's judgment. *Id.* at 17.

We further held that, "consistent with the parties' lease agreement, we instruct the trial court to calculate and award Gerstbauer his costs and attorney's fees incurred in this action." *Id.* Paragraph 12 of the parties' lease stated: "Each party shall pay the other party's reasonable legal costs and attorney's fees incurred in successfully enforcing against the other party any covenant, term or condition of this Lease" ("Paragraph 12"). Appellants' App. at 145. Accordingly, we reversed the trial court's judgment against Gerstbauer for conversion and we remanded the damages issue to the trial court "with instructions to calculate Gerstbauer's damages for unpaid rent...." *Id.* at 18.

On rehearing, Styers asserted that this court had improperly reweighed the evi-

dence in reversing the trial court's judgment on the conversion allegation. Styers also argued that we erred in "award[ing] Gerstbauer past and post-termination rental payments." *Capitol Speedway II* at 2. Nonetheless, we reiterated that our decision in *Capitol Speedway I* was based on the plain language of the parties' lease agreement, and we reaffirmed our prior decision. On July 11, 2006, we ordered Styers to pay to Gerstbauer and Capitol $997.98 for their appellate expenditures.

On remand, the trial court held a hearing on damages. Gerstbauer testified that Styers owed him $13,207 in unpaid rent and $6,227 in court costs. Gerstbauer and Capitol also presented evidence that they had incurred more than $143,000 in attorneys' fees throughout the litigation. Specifically, they asserted that they had incurred the following charges for their attorneys' services:

- $90,754.27 in trial attorneys' fees to Edward P. Benchik, between February 8, 1999, and November 6, 2006. Fees included costs for a motion to dismiss, a motion for summary judgment, numerous discovery motions, and consultation with appellate attorneys during *Capitol Speedway I* and *Capitol Speedway II;*
- $37,714.00 in appellate attorneys' fees to George T. Patton, Jr. and Peyton L. Berg of Bose McKinney & Evans, L.L.P., between October 7, 2004, and March 9, 2006. Fees included Berg's hourly rate of $130 and Patton's hourly rate of $300. Berg believed the original appeal "was particularly difficult," while Patton described it as "in the middle … range of complexity." Transcript at 115, 148. Berg wrote the appellate briefs, which Patton reviewed.
- $15,086.00 in post-appellate attorneys' fees in preparing for the damages hearing, including compiling expert witness reports.

*See generally* Appellants' App. at 88–92.

In response, Styers argued that Gerstbauer and Capitol's attorneys' fees were unreasonable and that they "should not be awarded any attorney fees at all" based on Gerstbauer's conduct throughout the litigation. *Id.* at 93. In the alternative, Styers presented an expert's report (the "expert report" or "report") on reasonable attorneys' fees. That report stated as follows: Gerstbauer's trial fees should be reduced by $46,313.38, leaving a balance of $44,440.89; Gerstbauer's appellate fees should be reduced by $14,676.50, leaving a balance of $23,037.50; and Gerstbauer's post-appellate fees should be reduced by $4,986.50, leaving a balance of $12,099.50. *See id.* at 88–92. More specifically, Styers' expert report identified on each invoice and deducted therefrom the following types of expenses:

- work unrelated to this litigation between the parties;
- nonsubstantive legal work (e.g., sitting in on, but in no way participating in, the trial);
- unnecessary or duplicative work and fees;
- fees arising from discovery abuses;
- fees "charged in connection with filing an ill-advised and unsuccessful motion for summary judgment," Plaintiff's Exh. 5 at 1, but also recognizing that if that motion was reasonable then $3,375 would be an appropriate fee;
- fees "to organize and index the voluminous pleadings," which "is normally a secretarial staff function," *id.* at 4;
- fees "for delivery of an envelope to plaintiff's counsel by an undisclosed staff member" of the firm, *id.* at 5;
- a $247.50 fee for "legal research on possible grounds for grant of a trans-

fer petition," which the expert report deemed unnecessary because "[n]either the plaintiff nor the defendants ever filed a petition for transfer," *id.*;

- $6,776.03 in appellate fees charged by Benchik for consultation with Bose McKinney & Evans, including $1,474.28 and $592 in costs Benchik incurred in twice traveling to Indianapolis to meet with Bose McKinney & Evans attorneys;

- $2,128 in appellate fees charged by Bose ·McKinney & Evans for "getting up to speed" with the case once Gerstbauer and Capitol chose to use different attorneys for the appeal in *Capitol Speedway I*, which the expert report described as an unreasonable use of "special counsel for appeal," Plaintiff's Exh. 8 at 1;

- $4058 charged by Patton for reviewing the appellate briefs and motions drafted by Berg, as well as this court's memorandum decisions in *Capitol Speedway I* and *Capitol Speedway II*;

- $2512.50 charged by Bose McKinney & Evans for intrafirm communications;

- a nonspecific reduction "to reflect the fact that fees for work on the theft/conversion issues are not recoverable under the Lease Agreement," Plaintiff's Exh. 14 at 4.

*See generally* Plaintiff's Exhs. 2–6, 8–15.

Styers thus argued that $79,577.89 would be a reasonable award of attorneys' fees to Gerstbauer and Capitol. Styers' attorney likewise submitted an affidavit stating that Styers had incurred $79,805.89 in attorneys' fees throughout the litigation, although that sum did not include fees incurred at the damages hearing. Styers then asserted that he was still entitled to recover on the trial court's original judgment because "the Court of Appeals did not reverse the statutory trespass claim that Styers won." Appellants' App. at 99.

On June 26, 2007, the trial court entered the following order on the remaining issues before it:

1. Pursuant to the decision and directive of the Indiana Court of Appeals, the Court now sets aside the judgment previously entered on July 24, 2004[,] in favor of plaintiff Styers. Any judgment previously entered concerning the wrongful retaining of personal property, treble damages, and the attorney fee award in favor of Styers is now set aside. To the extent that Styer[s'] brief can be read as a motion for entry of judgment in this [sic] favor upon alternative theories not specifically named by the Court of Appeals, the motion is denied.

2. The Court finding in favor of Styers and against defendant Terry P. Gerstbauer in the amount of $1,400 as a sanction for failure to complete discovery remains in place. This finding, for causing the unnecessary incurring of attorney fees for failure to provide discovery pursuant to the Indiana Trial Rules, is unchanged.

3. The Court now enters judgment in favor of Terry P. Gerstbauer and Capitol Speedway, Inc. and against Steven W. Styers upon the counter-claim as follows:

   a. For failure to pay rent due, the Court now enters Judgment in the amount of $6,769.21 to November 1, 1998[,] with the observation that Styers has paid in this amount to the Clerk so that interest ceased accruing thereon [in] September 2006. In addition, the Court enters Judgment in the amount of $6,438.24 from November 1, 1998[,] through March 25, 1999

(the date of sale of the real estate);

b. $6,227.77 in Court costs which amount includes the amounts found and identified by the Court of Appeals in its Order of July 11, 2006[,] which it had directed to be enforced by the Trial Court;

c. Attorney fee amounts in the sum of $9,500.

4. The Court now therefore enters Judgment in the total amount of $28,935.22 with interest to accrue upon the $6,769.21 from rent due date until September 1, 2006, and to accrue upon the rental balance of $6,438.24 with interest from its due date until paid at the legal rate, and with interest upon the court costs and attorney fee amounts from this date until paid. The Court directs that the Clerk pay the $6,769.21 held to Capitol Speedway and Gerstbauer promptly.

5. The Court will issue its separate memorandum within two weeks.

*Id.* at 19–20. And on August 1, 2007, the court supplemented its June order with the following "Memorandum of Attorney Fee Finding":

The Court apologizes to the parties for the delay between issuance of its attorney fee order and these words of explanation.... The Court has previously written nearly 15 pages of explanation but it is incomplete and does not add meaningfully to the Court's holding. The Court believes that the thought process can be far better condensed into these few paragraphs.

*Ultimately, this Court's ruling is that neither side expended anything like a reasonable sum or a commercially rea-sonable sum in incurring attorney fee billings in this case.* Terry Gerstbauer and [Capitol] (Gerstbauer) have won a total judgment for rent of $13,207.45 plus interest. In order to win this award, Gerstbauer has expended total attorney fees of $161,280.00 [1] and Styers has incurred total attorney fees, according to his most recent affidavit[,] of over $79,800.00 (it is unclear whether this includes the attorney fee hearing). Gerstbauer has argued by brief that every dollar of the $161,280.00 expenditure is reasonable. The Court cannot agree with that analysis.

Ultimately, this Court's ruling is that the total amount involved and results obtained by Gerstbauer (as contemplated in Rule of Professional Conduct 1.5) is the $13,207.45 plus interest for rent recovery and that a reasonable fee should not exceed one-third of that amount. The Court has therefore awarded $4,250.00 as a fee for that recovery. Because of this Court's unfortunate earlier ruling and the need for appellate review for overturning it, the Court believes that there was an additional sum of $4,250.00 earned as a further reasonable fee (in view of the amounts involved) earned on the direct appeal; ultimately this is where the Judgment amount for Gerstbauer was best earned and Gerstbauer received best value for his attorney fee award. Finally, the Court believes an additional $1,000.00 fee to be appropriate to defend a petition on re-hearing to protect a $13,200.00 judgment and for the attorney fee hearing. This ultimately is the explanation of how the Court achieved the $9,500.00 total for attorney fee award for "successfully enforcing a condition of the lease." *Incidentally, the*

---

1. The trial court's calculation appears to be about $18,000 greater than what Gerstbauer and Capitol alleged as their attorneys' fees. But that difference is not material to our analysis of the issues on appeal. We therefore do not discuss it.

*rental amount, while not stipulated to, was essentially uncontested.*

It is fair to say that the Court did not arrive at this conclusion by the means suggested by counsel for Styers by demeaning or second guessing the preparation efforts by trial counsel or by appellate counsel but instead by simply looking at the total value and scope of the litigation. *All attorneys and judges have seen situations where parties expend extraordinary amounts to litigate comparatively petty issues, often for reasons known only to themselves. Expenditures such as this, $161,280.00 over a $13,200.00 bill[,] are not, on their face[,] objectively reasonable.* This does not change the fact that it may well be what Gerstbauer requested of his attorneys and was willing to pay; Gerstbauer's willingness (or Styers' willingness) does not create reasonableness.

The Court's previous efforts at writing an explanation of these thoughts have reviewed the kinds of cases for which attorney fee payments might be made (including the distinctly separate issues for attorney fee awards such as the failures of discovery in this case). The Court made a review of the Rules of Professional Conduct Rule 1.5 [sic] on an item by item list with the side observation that the rule is a useful analysis tool but it is based upon how to bill a client, not to help the separate determination of objective reasonableness. The Court reviewed other attorney fee cases and found mechanic's lien cases to be most analogous; they routinely involve disputes of workmanship and the awards distinguish between the enforcement of the lien and the defense of the homeowner's allegations.... Finally[,] the Court wrote upon topics of analysis as to how the hours were incurred by the attorneys involved, and differentiating deeply between the parties' defending the claims against them as compared to actually winning claims (the only method in which they are ... entitled to recover attorney fees). *Most of the effort for Gerstbauer has been to defeat the claims of Styers, not to win his own claim.*

The Court's earlier award of attorney fee[s] against Gerstbauer and in favor of Styers as a discovery sanction was unchanged by the appeal and simply remains.

These are the ultimate themes the Court has analyzed in achieving its attorney fee award in this cause, an award which the Court deems to be appropriate under the circumstances. Many more words can be written on the subject, but this is a fair statement of the Court's conclusions.

*Id.* at 21–23. Styers filed a motion to correct error, which the trial court denied. This appeal ensued.

## DISCUSSION AND DECISION

### Appeal

■■■ Gerstbauer and Capitol (hereinafter collectively referred to as "Gerstbauer") challenge the trial court's award of $9,500 in attorneys' fees. We review an award of attorneys' fees for an abuse of discretion. *Benaugh v. Garner,* 876 N.E.2d 344, 347 (Ind.Ct.App.2007), *trans. denied.* The trial court has broad discretion in assessing attorneys' fees, and we will reverse only if the award is clearly against the logic and effect of the facts and circumstances before the court. *Id.* An abuse of discretion also occurs if the trial court misapplies the law. *See, e.g., Baxter v. State,* 734 N.E.2d 642, 645 (Ind.Ct.App. 2000).

As an initial matter, we note that Gerstbauer's award of attorneys' fees is based

on Paragraph 12 of the parties' lease.[2] "It is well established that parties are permitted to enter into agreements containing fee-shifting provisions as long as the provision does not violate public policy." *Walton v. Claybridge Homeowners Ass'n, Inc.,* 825 N.E.2d 818, 824–25 (Ind.Ct.App.2005). The purpose of allowing an award of attorneys' fees pursuant to an agreement is "to more fully compensate a party who has successfully enforced his legal rights in court. . . ." *Wilcox Lumber Co. v. Andersons, Inc.,* 848 N.E.2d 1169, 1172 (Ind.Ct.App.2006) (quotations omitted).

■■■ Our standard of review for interpreting the parties' contract, including Paragraph 12, is de novo. *See Dedelow v. Pucalik,* 801 N.E.2d 178, 183 (Ind.Ct.App. 2003). The goal of contract interpretation is to ascertain and enforce the parties' intent as manifested in the contract. *See Gregg v. Cooper,* 812 N.E.2d 210, 215 (Ind. Ct.App.2004), *trans. denied.* To that end, we construe the contract as a whole and consider all of the provisions of the contract, not just individual words, phrases, or paragraphs. *See id.* An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *Id.* However, when a contract is clear and unambiguous, the language must be given its plain meaning. *See, e.g., Tippecanoe Valley Sch. Corp. v. Landis,* 698 N.E.2d 1218, 1221 (Ind.Ct.App.1998), *trans. denied.*

■■■ Here, the fee-shifting provision of the parties' lease agreement, Paragraph 12, states: "Each party shall pay the other party's reasonable legal costs and attorney's fees incurred in successfully enforc-ing against the other party any covenant, term or condition of this Lease." Appellants' App. at 145. The trial court limited Gerstbauer's attorneys' fee award based on Gerstbauer's recovery on his breach of contract counter-claim, stating that "[m]ost of the effort for Gerstbauer has been to defeat the claims of Styers, not to win his own claim." *Id.* at 23. Hence, the trial court—perhaps relying on the expert report—interpreted Paragraph 12 to mean that Gerstbauer could only recover attorneys' fees on his breach of contract claim against Styers, and not for Gerstbauer's defense against Styers' action. On appeal, Gerstbauer asserts that he was the prevailing party on both counts and is entitled to recover reasonable attorneys' fees accordingly. We must agree with Gerstbauer.

The trial court's rationale for limiting Gerstbauer's recovery for attorneys' fees focused exclusively on the $13,207.45 judgment Gerstbauer won. Specifically, the trial court emphasized the following: "this Court's ruling is that the total amount involved and results obtained by Gerstbauer . . . is the $13,207.45 plus interest for rent recovery and that a reasonable fee should not exceed one-third of that amount"; Gerstbauer's attorneys' fees should be limited by "simply looking at the total value and scope of the litigation"; the parties' attorneys' fees were "not, on their face[,] objectively reasonable"; and "[t]he Court made a review of . . . Professional Conduct Rule 1.5 on an item by item list with the side observation that the rule is a useful analysis tool but it is based upon how to bill a client, not to help the separate determination of objective reasonable-

---

2. Gerstbauer asserts that the trial court improperly followed Indiana law on mechanic's liens in reaching its determination of reasonable attorneys' fees. We disagree. The trial court merely analogized Gerstbauer's fee claim to those in cases involving mechanic's liens. However, Gerstbauer's argument is irrelevant since we consider his request for attorneys' fees in light of Paragraph 12 and Indiana Rule of Professional Conduct 1.5(a).

ness." *Id.* at 21–23. The court then limited Gerstbauer's attorneys' fees to a total of $9,500. *Id.*

"Although the trial court is entitled to consider the amount involved in determining the reasonableness of the requested fees, we have held that the trial court abuses its discretion if it reduces an otherwise reasonable fee request based on the amount of the judgment." *Benaugh,* 876 N.E.2d at 348 (citing *Hanson v. Valma M. Hanson Revocable Trust,* 855 N.E.2d 655, 667 (Ind.Ct.App.2006)). As such, to determine whether the trial court here abused its discretion by looking only to the amount of Gerstbauer's judgment we must consider whether Gerstbauer's asserted attorneys' fees were "otherwise reasonable." *See id.* And to answer that question, we must consider the fee-shifting provision of the parties' lease agreement as well as Indiana Professional Conduct Rule 1.5(a). *See id.* at 347–48 (discussing *In re Order for Mandate of Funds,* 873 N.E.2d 1043, 1049 (Ind.2007) (using Professional Conduct Rule 1.5(a) to determine the reasonableness of attorneys' fees)).

The issue under Paragraph 12 is the extent to which Gerstbauer "successfully enforced his legal rights" under the lease against Styers. *See Wilcox Lumber Co.,* 848 N.E.2d at 1172. Again, the trial court limited Gerstbauer's attorneys' fees after it concluded that he was only entitled to the fees incurred in enforcing his counter-claim and not to the fees incurred in defending himself against Styers' claim. It is not disputed that Gerstbauer successfully enforced his counter-claim for breach of contract against Styers.

But Gerstbauer also successfully enforced the remedy upon default provision when he defended against Styers' conversion claim. To "enforce" something is to "give effect to" it. Webster's 3d New Int'l Dictionary 751 (2002). In defending himself against Styers' action, Gerstbauer relied upon—and sought to have the trial court give effect to—the provision of the lease that permitted him to retain Styers' property in the event of Styers' default. Thus, having been successful both in his defense against Styers' action and in his counter-claim, Gerstbauer was, on all counts, the prevailing party. As such, Gerstbauer is entitled to reasonable attorneys' fees incurred both in his defense and on his counter-claim.

Having concluded that Gerstbauer was entitled to attorneys' fees in his defense against Styers' action, we turn to Professional Conduct Rule 1.5(a) for guidance on the reasonableness of those fees. "[O]ur Rules of Professional Conduct give us guidance as to factors to be considered in determining the reasonableness of attorney fees. . . ." *Benaugh,* 876 N.E.2d at 347 (quoting *In re Order for Mandate of Funds,* 873 N.E.2d at 1049). More specifically, Indiana Professional Conduct Rule 1.5(a) provides the following non-exclusive factors to be considered in determining the reasonableness of attorneys' fees:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Again, the trial court here did not consider Professional Conduct Rule 1.5(a) after it concluded that the Rule "is based upon how to bill a client, not to help the separate determination of objective reasonableness." Appellants' App. at 22.

In determining whether Gerstbauer's alleged fees were reasonable, we make the following observations. This litigation has extended for nearly a decade, largely due to "numerous motions to compel discovery" filed by "both parties," *Capitol Speedway I* at 4, and has included (so far) a full trial, an appeal and rehearing, a damages hearing, and another appeal. Because of that, the hourly fees charged by Gerstbauer's various attorneys[3] were extended beyond the otherwise apparent scope of the claims. Additionally, Patton testified that his firm's billing rates were based on each lawyer's experience and compared to other rates statewide. And Gerstbauer was the prevailing party in all respects, having had a judgment against him of $82,428, plus costs and fees, reversed in *Capitol Speedway I*, and winning a $13,207 judgment against Styers on remand. Finally, the experience, reputation, and ability of Gerstbauer's attorneys are relevant.

However, Styers' action and Gerstbauer's counter-claim were readily resolved by the plain language of the parties' lease agreement. And there was no serious evidentiary dispute between the parties on either of those claims. As the trial court noted, the unpaid rental amount, "while not stipulated to, was essentially uncontested." Appellants' App. at 22. And in its original order, the trial court noted that the "fair market value of the personal property was identified by Styers . . . and the Court heard virtually no separate evidence upon that topic." *Id.* at 158. There were no stringent or excessive time demands connected with this litigation, there is no reason to suspect that Gerstbauer's attorneys were precluded from other employment based on their representation of Gerstbauer, and there is no evidence regarding the nature and length of Gerstbauer's relationship with his attorneys. Additionally, and significantly, we note that Styers incurred $79,805.89 in attorneys' fees, which is commensurate with the amount the expert's report conceded would be reasonable to award Gerstbauer.

We also note that the trial court considered the parties' attorneys' fees in this case to not be, "on their face[,] objectively reasonable." *Id.* at 22. We agree with the trial court that the attorneys' fees here appear excessive. But an appearance on its face is a subjective impression, not an objective determination. Our charge is to determine the objective reasonableness of attorneys' fees, which requires an examination of the facts and circumstances that gave rise to the fees. *See* Ind. Professional Conduct Rule 1.5(a).

Considering Paragraph 12, Professional Conduct Rule 1.5(a), and the record, we must conclude that Gerstbauer's attorneys' fees, at least to some extent, were "otherwise reasonable." *Benaugh*, 876 N.E.2d at 348. The trial court misinterpreted Para-

---

**3.** Benchik charged between $135 and $150 per hour, Berg charged $130 per hour, and Patton charged $300 per hour.

graph 12 and disregarded the significance of Professional Conduct Rule 1.5(a) in determining what constitutes a reasonable fee. Accordingly, the court's analysis on the award of attorneys' fees misapplied the law.

■ However, we need not remand this ten-year-old litigation to the trial court yet again. *See* Ind. Appellate Rule 66(C)(4) ("The Court may . . ., if damages are excessive or inadequate, order entry of judgment of damages in the amount supported by the evidence"); Appellants' Brief at 29 ("Gerstbauer requests that this Court reverse the trial court's . . . award of attorneys' fees to Gerstbauer and either calculate its own award or remand . . . .").[4] Gerstbauer was entitled to reasonable attorneys' fees both in his defense against Styers' action and for his counter-claim. And at the damages hearing, Styers conceded that, if Gerstbauer was entitled to fees, $79,577.89 would be a reasonable award to Gerstbauer. *See* Appellants' App. at 88–92. Since this amount approximates his own fees, Styers would be hard-pressed to contend otherwise.

We have reviewed the record, and we do not disagree with Styers and his expert's report. The $79,577.89 fee includes the reasonable costs Gerstbauer incurred both in his defense against Styers' claim and in his counter-claim, as well as costs for the appeal, rehearing, and damages hearing. That fee is properly net of duplicative charges, unrelated fees, nonsubstantive legal work, and other unnecessary expenditures by Gerstbauer's attorneys. We

might well take issue with the following fees that Styers' expert deducted from Gerstbauer's fees: (1) $3,375 for the unsuccessful summary judgment motion; (2) $247.50 for legal research relating to a possible transfer petition, even though no such petition was filed; (3) $4,709.75 charged by Benchik for consultation with Bose McKinney & Evans;[5] (4) $2,128 charged by Bose McKinney & Evans for "getting up to speed" with the case once the firm was hired, Plaintiff's Exh. 8 at 1; and (5) $4,058 charged by Patton for reviewing the appellate briefs and motions drafted by Berg, along with reviewing *Capitol Speedway I* and *Capitol Speedway II*. But it is not our task on appeal to parse the report. The report is in evidence, and we are satisfied that the report represents a reasonable fee for Gerstbauer to vindicate his rights under the lease. As such, we hold that Gerstbauer is entitled to recover $79,577.89 for his attorneys' fees.

■ Finally, we briefly address Styers' assertion that "Gerstbauer's dishonest conduct and perjurous [sic] testimony should prevent him from any award of attorney fees." Appellee's Brief at 15. That assertion is not supported by citation to authority and is therefore waived. *See* App. R. 46(A)(8)(a). Waiver notwithstanding, the trial court entered no finding of perjury against Gerstbauer, and to the extent that the trial court did find that Gerstbauer acted inappropriately during discovery, it assessed him fines for that behavior. As such, we are not persuaded that the record supports the further sanction of denying him attorneys' fees.

---

4. Under most circumstances, we would remand the question of a reasonable sum of attorneys' fees to the trial court. But given our authority under Appellate Rule 66(C)(4) to enter judgment in the amount supported by the evidence, Styers' concession that $79,577.89 is reasonable, and Gerstbauer's specific request for this court to "calculate its

own award," we find this disposition appropriate. *See* Appellants' Brief at 29.

5. This fee does not include the $1,474.28 and $592 in costs Benchik incurred in twice traveling to Indianapolis, since those consultations could just as easily have been conducted via phone or e-mail.

In sum, the trial court abused its discretion in awarding Gerstbauer attorneys' fees based exclusively on the amount of Gerstbauer's judgment. Taking Professional Conduct Rule 1.5(a), Paragraph 12, and the record into account, including Styers' own fees and the results obtained by Gerstbauer, we hold that Gerstbauer is entitled to have a recovery of $79,577.89 in attorneys' fees.

### Cross–Appeal

Styers raises two issues on cross-appeal. First, he asserts that he is entitled to judgment on his statutory trespass claim. Second, he argues that he is entitled to attorneys' fees pursuant to Indiana Code Section 34–52–1–1(b). We cannot agree with either of Styers' arguments.

■ Styers asserts that, in the trial court's original judgment, he won on his statutory trespass claim and that this court did not reverse the trial court's judgment on that claim in *Capitol Speedway I*. But Styers does not support his argument with citation to the appellate record. His argument is therefore waived. App. R. 46(A)(8)(a).

Waiver notwithstanding, the record on appeal contradicts Styers' assertion. Again, the trial court's original order stated as follows:

13. Styers filed his suit and, after an amendment of the complaint, ultimately has alleged nine paragraphs of complaint against Gerstbauer. Paragraph I alleges a violation of a breach of the contract term for quiet enjoyment. *Paragraph II alleges trespass.* Paragraph III alleges a common law conversion of the personalty. Paragraph IV alleges tortious interference with the personalty and, depending upon how the provision is read, with the realty. Paragraph V alleges exercise of unauthorized control and wrongfully depriving the plaintiff of the personalty, and depend-ing upon how the complaint is read, the realty. Paragraph VI alleges a violation of the Indiana statute upon conversion of personalty authorizing treble damages and attorney fees. Paragraph VII alleges unjust enrichment based upon Gerstbauer's wrongful ejectment and seizure of the improvements made upon the property. Plaintiff's Paragraph VIII alleges that Gerstbauer wasted the property by damaging it on October 8 (a claim the plaintiff apparently withdrew in that no evidence in support of it was submitted). Paragraph IX alleges all of the same complaints against [Capitol], noting that the business relationship between the individual and the Corporation were so co-mingled that both should be jointly responsible.

14. Because the Court finds that Gerstbauer was entitled to repossession of his land, forfeiting the contract because of Styers' failure to make payments timely, *the Court finds against Styers as to* paragraph I and *paragraph II of his complaint* for violating his rights of possession. The Court ... finds in favor of Styers for conversion of the personalty under paragraphs III, IV, V, and VI, but not for tortious interference or unauthorized control over the realty under paragraphs V and VI. The Court finds that there is no unjust enrichment as described in paragraph VII of the complaint in that repossession of the real estate was Gerstbauer's right. The Court heard no evidence in support of paragraph VIII and the Court additionally describes its earlier grant of paragraph IX that the award is joint against not only Gerstbauer but also [Capitol].

Appellants' App. at 159–60 (emphases added). Hence, the only part of Styers' amended complaint that alleged trespass was paragraph II, and the trial court expressly stated that "the Court finds

against Styers as to ... paragraph II." *Id.* at 160. And, in any event, the trial court on remand vacated its original order and entered judgment only in favor of Gerstbauer. *See id.* at 19. Styers' claims to the contrary must fail.

Styers' second argument on cross-appeal is likewise without merit. Indiana Code Section 34–52–1–1(b) provides:

> (b) In any civil action, the court may award attorney's fees as part of the cost *to the prevailing party,* if the court finds that either party:
>
>> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
>>
>> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
>>
>> (3) litigated the action in bad faith.

(Emphasis added.) The recovery of attorneys' fees under that Section is expressly limited "to the prevailing party." In no sense does that language describe Styers. Hence, Styers cannot prevail on his cross-appeal.

## Conclusion

Under the circumstances, unless Gerstbauer wanted to concede or be defaulted, he had no choice but to continue employing his attorneys throughout this litigation. The amount of fees incurred by both parties in this case appear unreasonable "on their face," as the trial court recognized. Appellants' App. at 22. But a proper consideration of Professional Conduct Rule 1.5(a) supports our attorneys' fee award in this appeal.

The trial court abused its discretion in awarding Gerstbauer attorneys' fees. The court misinterpreted Paragraph 12 of the parties' lease, and it misapplied Professional Conduct Rule 1.5(a). Accordingly, we must reverse the court's fee award.

However, rather than remand for reconsideration, we hold that Gerstbauer reasonably incurred $79,577.89 in attorneys' fees, and we direct the trial court to enter a judgment against Styers that includes that sum. We also hold that the issues raised by Styers on cross-appeal are without merit.

Affirmed in part and reversed and remanded in part.

ROBB, J., concurs.

MAY, J., dissents with separate opinion.

MAY, Judge, dissenting.

I agree with the majority that the trial court should not have determined Gerstbauer's attorney fees by looking only to the amount of the judgment. However, the majority's decision to award fees based solely on evidence presented by Gerstbauer's *opponent* amounts to an improper reweighing of the evidence that was before the trial court. I would remand so the trial court could properly recalculate attorney fees based on its analysis of the evidence before it in light of the legal standards the majority has articulated.

This court may in certain situations direct final judgment without new factfinding, but "this power is to be utilized only if the court is reviewing a pure question of law or a mixed question of law and fact." *Rebel v. National City Bank of Evansville,* 598 N.E.2d 1108, 1111 (Ind.Ct.App.1992). Cases involving resolution of disputed material facts should be referred back to the trial court. *Id.*

This case requires the resolution of disputed material facts on the attorney fees issue. The majority would award $79,577.89 instead of the $161,280 Gerstbauer requested or some other figure the facts might support, but when reviewing an award of attorney fees, we should not

reweigh the evidence or judge witness credibility. *E.g., Davidson v. Boone County,* 745 N.E.2d 895, 900 (Ind.Ct.App. 2001).

The trial court misapplied the law in determining the amount of Gerstbauer's attorney fees, and the majority purports to resolve that error by adopting in full the evidence presented by an expert retained by Styers, Gerstbauer's opponent. However, Gerstbauer also presented evidence of attorney fees. As the trial court noted, Gerstbauer presented evidence he had expended $161,280 in attorney fees, and he "argued by brief that every dollar of the $161,280.00 expenditure is reasonable." (Slip op. at 12.)

Because the majority has reweighed the evidence, its award is not a proper application of our authority under App. R. 66(C)(4) to "order entry of judgment in an amount supported by the evidence." *See Simon Property Group, L.P. v. Brandt Const., Inc.,* 830 N.E.2d 981, 993 (Ind.Ct. App.2005), *transfer denied* 855 N.E.2d 997 (Ind.2006). There we awarded damages on appeal where the only evidence of the fair market value of damaged property was in the amount of $86,874.45. The jury found Simon 50% at fault, so we awarded $43,437.23. "Because *the evidence supported only one amount* as the total loss in fair market value, we may order judgment for Landlord as a matter of law *in this undisputed amount,* and hereby do so." (Emphasis supplied.) The attorney fees evidence before the trial court in the case before us is not "undisputed," nor does the evidence support "only one amount."

The majority has determined the fee amount by improperly weighing that conflicting evidence, choosing to believe Gerstbauers opponent in every respect and to discredit the evidence Gerstbauer offered. We should not so invade the trial court's province as the finder of fact.

I fully appreciate the majority's reluctance to remand when doing so would undoubtedly extend this remarkably lengthy litigation. But our standard of review requires it, and I would not usurp the trial court's factfinding authority for the sole purpose of bringing this action to an earlier resolution. Therefore, I must respectfully dissent.