# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**KEVIN C. TYRA**
**BETH L. RIGA**
The Tyra Law Firm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

Attorneys for McGrath Refrigeration,
Inc. and John D. McGrath
**DAVID E. BALLARD**
**CLINT A. ZALAS**
Lee, Groves & Zalas
South Bend, Indiana

Attorneys for Michiana Contracting,
Inc.
**KRISTY RANS**
**CHRISTOPHER UYHELJI**
Gardner & Rans, P.C.
South Bend, Indiana

Attorney for John Dzierla and
Associates
**SCOTT KELLER**
South Bend, Indiana

Attorneys for Climate Makers, Inc.
**MARK FRYMAN**
**MARIETTO MASSILLAMANY**
Starr Austen & Miller, LLP
Logansport, Indiana

Attorneys for Shambaugh & Son, L.P.
**REBECCA MAAS**
**AIMEE COLE**
**FREEDOM VILLA**
Smith Fisher Maas & Howard, P.C.
Indianapolis, Indiana

FILED
Jul 13 2012, 8:49 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

BROTHERHOOD MUTUAL INSURANCE )
COMPANY as Subrogee of PLYMOUTH )
WESLEYAN CHURCH, )
)
     Appellant-Plaintiff, )

)

MICHIANA CONTRACTING, INC., McGRATH )
REFRIGERATION, INC., JOHN D. McGRATH, )
JOSEPH A. DZIERLA AND ASSOCIATES, )
INC. and SHAMBAUGH & SON, L.P., )

)

   Appellees-Defendants.    )

---

**APPEAL FROM THE MARSHALL CIRCUIT COURT**
The Honorable Curtis D. Palmer, Judge
Cause No. 50C01-1010-CT-37

---

**July 13, 2012**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Brotherhood Mutual Insurance Company ("Brotherhood"), as subrogee of Plymouth

Wesleyan Church ("Church"), appeals summary judgment for Michiana Contracting, Inc.

("Michiana"); McGrath Refrigeration, Inc. and John D. McGrath (collectively, "McGrath");

Joseph A. Dzierla and Associates, Inc. ("Dzierla"); and Shambaugh & Son, L.P.

("Shambaugh") (collectively, "Appellees"). Brotherhood presents three issues for our

review, one of which is dispositive: whether the wooden gym floor, which was the subject of

the Church's insurance claim with Brotherhood, was within the scope of work pursuant to the

contract and therefore subject to a waiver of subrogation. We reverse and remand.

## FACTS[1] AND PROCEDURAL HISTORY

On January 11, 2007, Michiana and the Church entered into a contract for the construction of an addition to the Church's main building. The two-story addition encompassed 48,195 square feet and included space for classrooms, a student center, and a gymnasium.

The contract between the Church and Michiana includes a waiver of subrogation, which states in relevant part:

> 11.4.7 The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire and other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

(App. at 84.)

---

[1] We heard oral argument on June 1, 2012, in Florence, Indiana as part of the Indiana State Bar Association's (ISBA) Solo and Small Firm Conference. We thank the ISBA staff for their hospitality and commend counsel. on the quality of their advocacy.

The contract between the Church and Michiana defines "Work" as "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project." (*Id*. at 55.) The contract defines "Project" as "the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner or by separate contractors." (*Id*.)

Language regarding the installation of the gym floor appears in various portions of the main contract document, including line items for the construction of a concrete floor and waterproofing. With regard to the gym floor, the contract also specifically states:

**<u>Alternative Costs</u>**
Alternative #1 – Vinyl Composition Tile at Gymnasium
Furnish and install VCT flooring at gymnasium with line kit in lieu of sealed concrete
ADD:        $11,610
Alternative #2 – Wood Gym Floor
Furnish and install maple gymnasium floor 3/8" padded wafer wood system using 25/32", 2 – ¼" third grade maple) [sic] in lieu of sealed concrete.
ADD:        $54,275

(*Id*. at 29) (emphasis in original). The contract does not indicate the Church agreed to either of the "Alternative Costs." Instead, after Michiana poured and sealed the concrete floor for the gym, the Church, without assistance from Michiana, covered the concrete with wood flooring.

The construction was completed on April 30, 2008, and the Church made its final

4

payment for the work on September 28, 2008. On January 3, 2009, a frozen sprinkler pipe broke above the ceiling of the gymnasium. The wooden gym floor was destroyed, and the Church filed an insurance claim to repair the floor. Brotherhood, the Church's insurance company, paid $37,355.80 for the claim.

On October 8, 2010, Brotherhood, as subrogee of the Church, sued Michiana, claiming Michiana breached its contract with the Church because it did not "properly construct and/or oversee the construction of the addition," (*id.* at 2); breached the implied warranty of workmanlike performance because it did not "use reasonable skill in the work it performed at the Church," (*id.* at 3); and was negligent because it did not construct the addition "so as to prevent the sprinkler lines from freezing." (*Id.* at 4.) On December 15, Brotherhood amended the claim to include similar breach of contract, breach of implied warranty of workmanlike performance, and negligence allegations against the other Appellees.

On August 26, 2011, Dzierla filed a motion for summary judgment and argued Brotherhood's complaint was "completely barred by a waiver of subrogation provision applicable to the Construction Contract which expressly prohibits subrogation claims for damages covered by property insurance." (*Id.* at 92.) McGrath moved for summary judgment on the same ground, and also claimed summary judgment was appropriate because the wooden gym floor was "work" as defined by the contract, and thus it was subject to the waiver of subrogation. (*Id.* at 110.)[2]

---

[2] Michiana joined McGrath's motion for summary judgment.

On September 28, Brotherhood responded to the motions for summary judgment and filed its own motion for partial summary judgment. In its own motion, Brotherhood argued:

> 1) the [Brotherhood] policy with the church was outside the scope of the waiver of subrogation, 2) the damages for which [Brotherhood] seeks compensation are not to the "Work" of the contract between the Church and Michiana, 3) the waiver of subrogation only applied to the "Work" of the contract, which did not include the gym floor, and 4) the contract failed to put the Church on notice that it was indemnifying defendants for their own negligence.

(*Id.* at 133.) Brotherhood's response to the Appellees' motions stated essentially the same arguments and indicated summary judgment for the Appellees was not appropriate because there was a genuine issue of material fact whether the gym floor was personal property and thus not subject to the provisions of the contract between the Church and Michiana, or if the wooden gym floor was within the scope of work described in the contract and subject to the waiver of subrogation.

On October 20, the trial court granted summary judgment for the Appellees and denied partial summary judgment for Brotherhood.

**DISCUSSION AND DECISION**

Summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Indiana Trial Rule 56(C). The moving party bears the burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Huntington v. Riggs*, 862 N.E.2d 1263, 1266 (Ind.

6

Ct. App. 2007), *trans. denied.*  If the moving party meets these two requirements, the burden shifts to the non-movant to set forth specifically-designated facts showing that there is a genuine issue of material fact for trial. *Id.*

"A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." *Id.*  "On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage." *Id.*  We will liberally construe the non-movant's designated evidence to ensure he is not improperly denied his day in court. *Ind. Dept. of Rev. v. Caylor-Nickel Clinic*, 587 N.E.2d 1311, 1313 (Ind. 1992).  "In addition, '[t]he fact that the parties [made] cross-motions for summary judgment does not alter our standard of review.  Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law.'" *Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669, 676 (Ind. Ct. App. 2007).

We review and interpret the language of a contract *de novo*. *Gerstbauer v. Styers*, 898 N.E.2d 369, 379 (Ind. Ct. App. 2008).  When a contract is clear and unambiguous, the language must be given its clear meaning. *Id.*  An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *Id.*  The goal of contract interpretation is to ascertain and enforce the parties' intent as manifested in the language of the contract. *Id.*  We construe the contract as a whole and

7

consider all provisions of the contract, not just the individual words, phrases, or paragraphs. *Id*. We will reverse a summary judgment based on the interpretation of a contract if the trial court misapplies the law. *Perryman v. Motorist Mut. Ins. Co*., 846 N.E.2d 683, 687 (Ind. Ct. App. 2006).

The trial court found the wooden gym floor was within the "Scope of Work" under the contract:

> 15. The court finds that the installation of a floor (of some type) within the gymnasium was part of the Work and a part of the Project as defined by the contract regardless of whether it was installed by the general contractor, a subcontractor, an outside contractor hired separately by the church, or by the church itself. The gymnasium floor was not analogous to the contents of a building which would not have been covered by the waiver of subrogation clause as discussed in *Midwestern Indemnity Co. v. System Builders, Inc*., 801 N.E.2d 661 (Ind. App. 2004) and *Town of Silverton v. Phoenix Heat Source System, Inc*., 948 P.2d 9 (Colo. App. 1997).

(App. at 191.) Brotherhood argues that finding "ignored the terms in the contract and incorrectly applied the law to the facts[.]" (Br. of Appellant at 10.)

Brotherhood claims the trial court should have interpreted the contract by reading Section 1.1.3 of A201-1997, a document with terms incorporated into the main contract, and Section 0800.1(A)(6) of the Owner's Special Conditions under the contract. Section 1.1.3 defines "work" under the contract as: "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the project." (App. at 55) Section 0800.1(A)(6) defines the terms "provide" or "to be provided" as "work and

8

items to be furnished and/or installed by the contractor." (*Id*. at 12.) Thus, Brotherhood contends, the two sections should be read together to state: "'Work' is defined as the construction and services required by the Contract documents . . . [which] includes all other labor, materials, equipment and services furnished and/or installed by the Contractor to fulfill the Contractor's obligations." (Br. of Appellant at 11) (emphasis omitted).

Based on its reading of the two sections, Brotherhood asserts the wooden gym floor, which was the subject of the insurance claim, was not "Work" because, while Michiana poured and sealed the concrete for the gym floor, the Church installed the wood floor atop the concrete without assistance from Michiana. In addition, Brotherhood contends the contract does not contain exact specifications for the installation of the wooden gym floor; instead, the contract mentions the gym floor as a series of options. Because the installation of the wooden gym floor was not "Work" pursuant to the contract, Brotherhood concludes, it does not fall under the terms of the waiver of subrogation agreement, and summary judgment was inappropriate.

We agree. Under the section of the contract entitled, "Scope of Work" (App. at 21), there are lists of multiple types of construction to be completed. Each task is indicated as part of a numbered list, and there are no dollar amounts next to each individual task. In contrast, the information specific to the installation of the wooden gym floor, such as the type of flooring to be used in lieu of sealed concrete, is listed after all other tasks, under a section entitled, "Alternative Costs." (*Id*. at 29.) The word "ADD" is present before the dollar

amounts indicating the cost of each option. (*Id*.)

Neither party designated evidence the Church approved either option, nor is there any indication Michiana charged the Church for the installation of the wooden gym floor. In fact, it seems undisputed the Church installed the wooden gym floor without Michiana's assistance. The parties never agreed the addition of the wooden gym floor installation was "work" under the contract, and we are not at liberty to rewrite the contract to include the wooden gym floor installation. *See Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 501 (Ind. Ct. App. 2007) (we will not add provisions not agreed upon by the parties).

The installation of the wooden gym floor was not accepted as part of the work and thus not added to the total owed to Michiana, and the Church in fact installed the wooden gym floor at issue. The wooden gym floor therefore was not within the "Scope of Work" for the project and therefore was not subject to the waiver of subrogation. Therefore, we reverse the summary judgment and remand for proceedings consistent with this opinion.

Reversed and remanded.

BAKER, J., and BAILEY, J., concur.