

ATTORNEYS FOR APPELLANTS

Thomas F. Bedsole
Maggie L. Smith
Emily J. Schmale
Frost Brown Todd, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

James P. Fenton
Timothy A. Manges
Fletcher Van Gilder, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Southwest Allen County Fire Protection District and Tera K. Klutz, in her official capacity as Auditor of Allen County, Indiana, | February 14, 2020 |
| | Court of Appeals Case No. 19A-PL-510 |
| *Appellants-Defendants,* | Appeal from the Allen Superior Court |
| v. | The Honorable Craig J. Bobay, Judge |
| City of Fort Wayne, | Trial Court Cause No. 02D02-1605-PL-231 |
| *Appellee-Plaintiff.* | |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellants-Defendants, the Southwest Allen County Fire Protection District (District) and Tera K. Klutz,[1] in her official capacity as Auditor of Allen County, Indiana (Auditor), appeal the trial court's summary judgment in favor of Appellee-Plaintiff, the City of Fort Wayne (City), on the City's request for declaratory judgment to receive the tax revenues from Annexed Territories.[2]

We affirm in part, reverse in part, and remand for further proceedings.

# ISSUES

The District raises two issues for our review, which we restate as:

(1) Whether the City is entitled to receive the tax revenue from the fire protection services it provided to annexed areas; and

(2) Whether the City is entitled to retroactive relief even though the City failed to exhaust its administrative remedies.

# FACTS AND PROCEDURAL HISTORY

The underlying facts were stated by this court in its disposition of the first appeal; therefore, we shall rely on *City of Fort Wayne v. Southwest Allen County Fire Protection District*, 82 N.E.3d 299 (Ind. Ct. App. 2017), *trans. denied* (First

---

[1] The Auditor did not file a brief on appeal.

[2] We heard argument in this cause on December 11, 2019 in the Indiana Court of Appeals Courtroom in Indianapolis, Indiana. We thank counsel for their excellent advocacy.

Appeal) for the recitation of the facts. The District is a fire protection district created in 1986 pursuant to state law. Beginning in December of 1987, the City effected a series of fifteen annexations of territory, formerly located within the District. The first of these annexations took effect in December 1987, with the most recent being on January 1, 2006. Following the effective date of these annexations, the Fort Wayne Fire Department (FWFD) provided fire protection services to the areas within the annexed territories (Annexed Territories) that formerly were serviced by the District. Subsequent to the annexations, neither the City, FWFD, or the FWFD Pension Fund received distributions of property tax revenue relating to the fire protection services from the Annexed Territories; rather, the Auditor continued to make these distributions to the District.

By letter dated August 27, 2014, the City notified the District and the Auditor that pursuant to Indiana's annexation statutes—enacted in Ind. Code §§ 36-8-11-16; -22—once the areas that were part of the District were annexed by the City, and once the City began providing fire protection services to the Annexed Territories, the Annexed Territories were no longer part of the District and the property tax revenues derived from these Annexed Territories should have been redirected to the applicable City fire protection funds.

[6]     Each year, the Department of Local Government Finance (DLGF) prepared a document, titled the 1782 Notice,[3] and sent it to the City. The 1782 Notice is based on assessed values information provided by the Auditor. This information submitted by the Auditor includes an allocation of the values to be directed, among others, to specific City or District funds. The Auditor provided the total valuation of the Annexed Territories to the DLGF, based upon an understanding, rooted in an Unofficial Indiana Attorney General Advisory Letter of July 6, 1988, that informed that the District was grandfathered. Specifically, this Unofficial Letter advised that the annexing municipality cannot tax the annexed area within the fire protection district for fire protection services in order to avoid the risk of double taxation. Accordingly, the Auditor calculated the total assessed value of land within the boundaries of the District, including the assessments of the Annexed Territories. The Auditor did not include the Annexed Territories, now serviced by the FWFD, in the calculation of the total attributable to the City and the FWFD.

[7]     On May 11, 2016, the City filed its Complaint for Declaratory and Other Relief against the District and the Auditor, seeking a declaration that the City is entitled to receive the property tax revenues of the Annexed Territories. On July 27, 2016, the Auditor filed her motion to dismiss Plaintiff's Request, arguing that the trial court did not have subject matter jurisdiction over the City's claim because the City had failed to exhaust the administrative remedies

---

[3] The 1782 Notice is the notice of final budget recommendations pursuant to I.C. § 6-1.1-17-16(d) (2016).

available to it. On August 8, 2016, the Auditor filed a complementary motion to dismiss, in which the Auditor sought a complete dismissal of the City's Complaint based on a lack of subject matter jurisdiction because the claims asserted fell within the exclusive jurisdiction of the Indiana Tax Court. The District joined in the Auditor's motions. On October 30, 2016, following a hearing, the trial court issued its Order, granting the Auditor's and the District's motions to dismiss.

[8] The City appealed. After conducting oral argument, this court issued the First Appeal, concluding that

> the present case is an annexation case and requires no consideration of substantive tax law. The parties do not dispute the tax assessments and do not request a change in tax levies nor are the parties attempting to collect a tax. No calculation to determine a specific tax assessment must be made, and no interpretation of tax laws is required. Rather, the City's dispute merely centers on the intended recipient of taxes already assessed and collected, pursuant to I.C. § 36-8-11-22. This is not quintessentially a tax matter.

*Id*. at 304 (internal citation omitted). Accordingly, we held that subject matter jurisdiction was vested in the trial court and we remanded for further proceedings.

[9] On remand, the City sought partial summary judgment on December 11, 2018, as to the merits of its declaratory judgment request, seeking a declaration that the City is entitled to collect future tax revenues for the Annexed Territories. That same day, the District also moved for summary judgment, responding that

the City cannot statutorily receive the future tax revenues of the Annexed

Territories, and seeking a declaration that the relief requested by the City in its

Complaint—reallocation of past, present, and future tax revenues—was not

available as to any tax levy because the City had failed to exhaust its

administrative remedies.

[10] On February 7, 2019, after a hearing, the trial court granted the City's motion

for partial summary judgment and denied the District's requested relief. In its

summary judgment, the trial court concluded:

> The [c]ourt disagrees with the [District] as to which statute or
> statutes control. On appeal of this [c]ourt's October 30, 2016
> Order of dismissal, the Indiana Court of Appeals concluded that
> this is an annexation case, and as such, the annexation statute
> I.C. § 36-8-11-22 controls. It is undisputed that the [District] had
> fire protection districts in the Annexed Territories, that the City
> has annexed the Annexed Territories, and that the City has
> provided fire protection services in the Annexed Territories. The
> [c]ourt concludes that I.C. § 36-8-11-22 plainly states that when a
> municipality annexes areas that are part of a fire protection
> district, and then provides fire services in the annexed areas, the
> fire protection district ceases to exist in those areas. Thus, by
> operation of the controlling statute, and as a matter of law, the
> [c]ourt concludes that the [District] has ceased to exist in the
> areas of the Annexed Territories.
>
> The [District] makes the additional argument that the [c]ourt
> lacks the authority to grant the relief sought by the City. The
> [District] continues to argue that the City must seek an
> administrative remedy via the [DLGF] and thereafter appeal to
> the Indiana Tax Court. In the [First Appeal], the Indiana Court
> of Appeals summarized the [District's] arguments on appeal,

which are identical to this second argument now being advanced by the [District] in its [m]otion for [s]ummary [j]udgment. The Court of Appeals concluded that this [c]ourt can grant relief "because the present case is an annexation case and requires no consideration of substantive tax law . . ." Thus, "the trial court has subject matter jurisdiction to decide the City's request for declaratory judgment."

The determination of the Court of Appeals as to this legal issue is both binding on this [c]ourt and the appellate court in any subsequent appeal involving the same case and substantially the same facts. The [First Appeal] and its binding nature on legal issues facing the [c]ourt in this case, compels the [c]ourt to conclude that as a matter of law, this [c]ourt has the authority and subject matter jurisdiction to grant relief sought by the City. The City need not pursue a remedy through the DLGF.

(Appellant's App. Vol. II, pp. 18-19) (internal references omitted).

[11] The District now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[12] In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-

moving party. *Id*. at 608. A fact is 'material' for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action; a factual issue is 'genuine' if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. 2000). The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *First Farmers Bank & Trust Co.*, 891 N.E.2d at 607.

[13] We observe that, in the present case, the trial court entered findings of fact and conclusions of law thereon in support of its judgment. Generally, special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer a court valuable insight into the trial court's rationale and facilitate appellate review. *Id.*

## II. *Tax Revenue*

[14] At issue here is the broad and extensive statutory scheme that establishes and funds fire protection districts and addresses annexation issues connected to these districts. The 1981 enabling legislation mandates that the Fire District is to provide fire protection services and receive the tax revenues for the real property within the Fire District's boundaries, which the legislation expressly contemplates might be overlapping between the Fire District boundaries and other municipal entities' boundaries. *See* I.C. §§ 36-8-11-4; -16.

In 1987, the General Assembly continued the evolution of fire districts and enacted Public Law 341 which addressed aspects of fire districts in the context of annexation. In this regard, Indiana Code section 36-8-11-22 allows property in a fire district to be transferred to a municipality upon annexation, and the municipality then provides the services and receives the tax revenue. Specifically, the statute provides:

> Areas annexed by municipalities
>
> (a) Any area that is part of a fire protection district and is annexed by a municipality that is not a part of the district ceases to be a part of the fire protection district when the municipality begins to provide fire protection services to the area.
>
> ****
>
> Nothing in this section requires a municipality to provide fire protection services to an annexed area described in this subsection.

I.C. § 36-8-11-22(a).

Furthermore, Indiana Code section 36-4-3-7 requires that the annexing municipality takes on all the financial obligations of that fire district relating to the assessed valuation of the property being removed from the fire protection district. In other words, the municipality obtaining the revenues must also be responsible for the payment of the ongoing obligations. Specifically, the statute stipulates:

Publication of adopted ordinance; effectiveness; fire protection districts.

(c) **Subsection (d) and (e) apply to fire protection districts that are established after July 1, 1987** . . .

(d) [] whenever a municipality annexes territory, all or part of which lies within a fire protection district (I.C. § 36-8-11), the annexation ordinance (in the absence of remonstrance and appeal under section 11 or 15.5 of this chapter) takes effect the second January 1 that follows the date the ordinance is adopted and upon the filing required by section 22(a) of this chapter. Except in the case of an annexation to which subsection (g) applies, the municipality shall:

> (1) provide fire protection services to that territory beginning the date the ordinance is effective; and

> (2) send written notice to the fire protection district of the date the municipality will begin to provide fire protection to the annexed territory within ten (10) days of the date the ordinance is adopted.

(e) If the fire protection district from which a municipality annexes territory under subsection (d) is indebted or has outstanding unpaid bonds or other obligations at the time the annexation is effective, the municipality is liable for and shall pay that indebtedness in the same ratio as the assessed valuation of the property in the annexed territory (that is part of the fire protection district) bears to the assessed valuation of all property in the fire protection district, as shown by the most recent assessment for taxation before the annexation, unless the assessed property within the municipality is already liable for the indebtedness.  . . .

I.C. § 36-4-3-7 (emphasis added).

[17] Focusing on the 1987 statutory amendments, the District contends that because the District was created on or before June 14, 1987, the financial protections provided in I.C. § 36-4-3-7 are not applicable. "To avoid disharmonious, irrational, [and] illogical results," the District maintains that the date limitation of I.C. § 36-4-3-7 must be read to also apply to I.C. § 36-8-11-22, which was enacted simultaneously with I.C. § 36-4-3-7, and therefore, as the District was created prior to June 14, 1987, the boundaries of the taxing district for the purpose of levying taxes cannot be changed. (Appellant's Br. p. 17). Resorting to public policy, the District claims that "[t]his is the only way to shield fire districts from municipalities using I.C. § 36-8-11-22 as a sword to selectively annex only those properties in the fire district with a sizeable property tax base—as was done here—while leaving the fire district still holding the financial responsibilities to provide fire services to the remainder of the fire district but leaving it without sufficient resources to do so because of the selective annexation." (Appellant's Br. p. 18). To support its combined reading of the two statutes, the District relies on the general guidelines to interpret statutes. It argues that because both statutes were part of the same Act dealing with the same subject matter (Annexation of fire protection districts), the Legislature knew that Indiana law mandates the statutes must be read together. Providing the temporal framework in I.C. § 36-4-3-7, which carried over to all the other statutes in the Act, meant that the Legislature did not have to repeat the date limitation in each of the statutes in the Act.

[18] In response, the City claims that where the City has annexed areas within the District and has provided fire protection services to those same areas, the District ceases to exist, entitling the City to the tax levies of the Annexed Territories. To support its argument, the City relies on another canon of statutory construction, *i.e.*, "when general and specific statutes conflict in their application to a particular subject matter, the specific statute will prevail over the general statute." *Lake Co. Bd. of Elections and Registration, v. Millender*, 727 N.E.2d 483, 486 (Ind. Ct. App. 2000). The specific statute being I.C. § 36-8-11-22, which—according to the City—unambiguously provides that "[a]ny area that is part of a fire protection district and is annexed by a municipality that is not part of the district ceases to be a part of the fire protection district when the municipality begins to provide fire protection services to the area." The City contends that this statute "speaks plainly to this case and admits of no exceptions where a city has annexed areas of a fire protection district and has begun to provide fire protection services to those areas." (Appellee's Br. p. 15). Had the Legislature wished to provide that I.C. § 36-8-11-22 only applied to districts established after June 14, 1987, it could have easily incorporated a date as it did in I.C. § 36-4-3-7(c). Rather, the Legislature's failure to include a date signals its intent that no date should be associated with I.C. § 36-8-11-22.

[19] While both parties implicitly appear to advance a claim that the annexation statutes are ambiguous, we are mindful that the parties' disagreement about a provision is not conclusive of ambiguity, but is merely evidence that an ambiguity *may* exist. *See Indianapolis Publ. Transp. Corp. v. Ind. Dep't of State*

*Revenue*, 512 N.E.2d 906, 908 (Ind. Tax Ct. 1987). When, as here, appellate courts interpret a statute, they independently review a statute's meaning and apply it to the facts of the case under review. *State Farm Fire and Cas. Co. v. Riddell Nat. Bank*, 984 N.E.2d 655, 658 (Ind. Ct. App. 2013), *trans. denied*. A court should construe and interpret a statute only if it is ambiguous. *Jefferson Smurfit Corp. v. Ind. Dept. of State Revenue*, 681 N.E.2d 806, 810 (Ind. Tax Ct. 1997). A statute that is clear and unambiguous must be read to mean what it clearly expresses, and its plain and obvious meaning may not be enlarged or restricted. *Dep't of State Revenue v. Horizon Bancorp*, 644 N.E.2d 870, 872 (Ind. 1994). The words and phrases of such a statute shall be taken in their plain, ordinary, and usual sense. *State Bd. of Tax Comm'rs v. Jewell Grain Co.*, 556 N.E.2d 920, 921 (Ind. 1990). But if a statute is susceptible to more than one interpretation, it is deemed ambiguous and thus open to judicial construction. *Sees v. Bank One, Ind., N.A.*, 839 N.E.2d 154, 157 (Ind. 2005). At that point, we will engage in construction to effect the intent of the legislature. *Hinshaw v. Bd. of Comm'rs of Jay Co.*, 611 N.E.2d 637, 638 (Ind. 1993). We do not presume that the legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result. *State ex. rel. Hatcher v. Lake Superior Ct., Room Three*, 500 N.E.2d 737, 739 (Ind. 1986).

[20] Our review of the statute at issue, I.C. § 36-8-11-22, does not reveal any ambiguity and requires no judicial interpretation. The statute is unequivocal that where, as here, the area that was originally part of the District, becomes annexed by the City, the area ceases to be part of the District as soon as the City

begins to provide fire protection services to the Annexed Territory. The parties do not dispute that since the annexation, the City has provided the Annexed Territories with fire protection services. With the exception of providing fire protection services, the legislature did not impose any other requirements on an annexing municipality prior to becoming the recipient of the tax revenue in the annexed areas.

[21] We are not persuaded by the District's argument that the temporal framework in I.C. § 36-4-3-7 should be read into the other statutes of the Act. While both statutes are part of the same Act, our legislature did not provide any indication that the date restriction included in one statute, should be read into another statute. Rather to the contrary: while I.C. § 36-4-3-7 consists of subsections (a) through (g), our legislature explicitly limited the date restriction to apply only to subsections (d) and (e). As our legislature restricted the application to two specific subsections within a broader statute, there is no reason to infer, absent any explicit indication, that it intended to have us apply the same restrictive provision in a different statute. *See Jefferson Smurfit Corp.*, 681 N.E.2d at 810 ("[W]hen a definite provision is made with reference to one particular subdivision of a section of the law dealing with the identical subject matter as the other subdivisions thereof and a similar reference is omitted from the other subdivisions thereof as well as from all of the rest of the section, the particular reference is intended to apply solely to the subdivision in which it is contained and to exclude its application from all of the rest.") Accordingly, giving effect to the plain, ordinary, and usual meaning of the words of the statute, we

conclude that upon annexation and provision of the fire protection services to the Annexed Territories, the City was entitled to receive the assessed tax revenue associated with the Annexed Territories.

### III. *Administrative Remedies & Reallocation of Tax Levies*

### A. *Law of the Case*

[22] As a threshold issue, we need to determine the parameters of this second issue. The City contends, and the trial court agreed, that the District's argument concerning the exhaustion of administrative remedies is barred by the law of the case. Pointing to our decision that the trial court has subject matter jurisdiction because "there is no tax law that needs interpreted or applied" and footnote 4 in which we outline a possible litigation strategy with respect to the DLGF, the City claims that the law of the case derived from the First Appeal limited the administrative remedy to the situation when "the Auditor and/or DLGF fail to comply with the declaratory judgment." (First Appeal, 82 N.E.2d at 304, n.4).

[23] The law of the case doctrine provides that an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and substantially the same facts. *Pinnacle Media, LLC v. Metr. Dev. Com'n of Marion Co.*, 868 N.E.2d 894, 901 (Ind. Ct. App. 2007), *trans. denied*. The purpose of the doctrine is to minimize unnecessary relitigation of legal issues once they have been resolved by an appellate court. *Id*. Accordingly, under the law of the case doctrine, relitigation is barred for all issues decided "directly or by implication in a prior decision." *Id.* However,

where new facts are elicited upon remand that materially affect the questions at issue, the court upon remand may apply the law to the new facts as subsequently found. *Id*. We also note that the law of the case doctrine "is a discretionary tool." *Hanson v. Valma M. Hansom Revocable Trust*, 855 N.E.2d 655, 662 (Ind. Ct. App. 2006). To invoke this doctrine, the matters decided in the earlier appeal must clearly appear to be the only possible construction of an opinion. *Id*. Thus, questions not conclusively decided in the earlier appeal do not become law of the case. *Id*. Moreover, statements that are not necessary in the determination of the issues presented are dicta, are not binding, and do not become the law of the case. *Id*. As always, it should be remembered that we do not decide issues in footnotes. *See Richardson v. State*, 856 N.E.2d 1222, 1229 (Ind. Ct. App. 2006), *trans. denied*.

[24] The First Appeal analyzed whether the trial court had subject matter jurisdiction over the dispute between the parties. Based on the specific facts before us, we concluded that the case was essentially an annexation case which did not require an interpretation of tax laws. The current second issue before us on this subsequent appeal focuses on the question as to whether the City should have exhausted its administrative remedies prior to being awarded the tax levies of the Annexed Territories. Failing to exhaust administrative remedies is not directly or by implication connected to the subject matter jurisdiction and should be considered as a separate question, unrelated to the First Appeal. *See First Am. Title Ins. Co. v. Robertson*, 19 N.E.3d 757, 760 (Ind. 2014) ("the exhaustion of administrative remedies . . . is a procedural error and does not

implicate the trial court's subject matter jurisdiction.") Accordingly, the law of the case doctrine is not implicated and we have jurisdiction to decide this issue on the merits.

## B. *Tax Revenues*

[25] The City's declaratory judgment action requested the trial court to determine whether the City is entitled to past, present, and future property tax revenues derived from the Annexed Territories and to order tax revenues previously allocated to the District reallocated to the City. However, in its motion for partial summary judgment, the City only sought a declaration that the City is entitled to future tax revenues.

[26] On the other hand, the District sought summary judgment not only as to its right to continue providing fire protection services to the Annexed Territories, but also that any tax levy, past, present, and future, be challenged through the administrative process prior to being reallocated to the City.

[27] The trial court granted partial summary judgment to the City and denied the District's summary judgment. The District appealed the trial court's summary judgment and is now challenging the trial court's denial of its motion of summary judgment, *i.e.*, that the City is not entitled to past tax levies that have already been allocated and distributed. The City does not address past allocations, but only presents an argument with respect to current and future allocations of the tax levies. For judicial expediency's sake, we will address the

tax levy argument as initially presented by the District, *i.e.,* past, present, and future payments.

[28]     Property tax revenues fund local government through tax levies. *See* I.C. § 6-1.1-17-1 *et seq.*[4]  The tax levy for a specific area is based on the political subdivision's budget, tax rates, and assessed values as determined and certified by the auditor.  I.C. § 6-1.1-17-1 (2016).  The county auditor then submits the budget, tax rates, and tax levies to the County Board of Tax Adjustment for review and adjustment.  I.C. §§ 6-1.1-17-5 (2012);-6 (2016).  Challenges must be made by way of an appeal to the DLGF.  I.C. § 6-1.1-17-13 (2009).  After the DLGF provides formal notice with a 1782 Notice of the final budget, the objecting political subdivision "must file a statement with the [DLGF] no later than ten (10) days" after receiving the annual notice of tax levy.  I.C. § 6-1.1-17-

---

[4] By P.L. 257-2019, our Legislature made significant changes to Chapter 17 of Indiana Code 6-1.1.  In essence, the current Chapter provides that the auditor shall submit a certified statement of the assessed value for a specific political subdivision to the DLGF.  I.C. § 6-1.1-17-1(a).  In turn, the DLGF "shall make the certified statement available on the department's computer gateway."  I.C. § 6-1.1-17-1(b).  Thereafter, the DLGF "shall certify the tax rates and tax levies for all funds of political subdivisions subject to the [DLGF's] review."  I.C. § 6-1.1-17-16(a).

> The [DLGF] shall give the political subdivision notification electronically in the manner prescribed by the [DLGF] specifying any revision, reduction, or increase the department proposed in a political subdivision's tax levy or tax rate.  The political subdivision has ten (10) calendar days from the date the political subdivision receives the notification to provide a response electronically in the manner prescribed by the [DLGF].  The response may include budget reductions, reallocation of levies, a revision in the amount of miscellaneous revenues, and further review of any other item about which, in the view of the political subdivision, the department is in error.  The [DLGF] shall consider the adjustments as specified in the political subdivision's response if the response is provided as required by this subsection and shall deliver a final decision to the political subdivision.

I.C. § 6-1.1-17-16(g).  Accordingly, the Legislature has streamlined the DLGF's procedures by incorporating an electronic gateway system, which replaces the formerly written 1782 Notice of the final budget.

13 (2009). The DLGF shall then "consider the adjustments as specified in the political subdivision's response if the response is provided as required by this subsection and shall deliver a final decision to the political subdivision. I.C. § 6-1.1-17-13 (2009).

[29] "A claimant with an available administrative remedy must pursue that remedy before being allowed access to the courts." *Graham v. Town of Brownsburg*, 124 N.E.3d 1241, 1247 (Ind. Ct. App. 2019), *reh'g denied, trans. denied*. This is true even when neither a statute nor agency rule specifically mandates exhaustion as a prerequisite to judicial review. *Id*. Thus, where an administrative remedy is readily available, "filing a declaratory judgment action is not a suitable alternative" to exhaustion. *Id*. The exhaustion doctrine is supported by strong policy reasons and considerations of judicial economy.

> The exhaustion requirement serves to avoid collateral, dilatory action . . . and to ensure the efficient, uninterrupted progression of administrative proceedings and the effective application of judicial review. It provides an agency with an opportunity to correct its own errors, to afford the parties and the courts the benefit of the [agency's] experience and expertise, and to compile a [factual] record which is adequate for judicial review.

*Id*. There are exceptions to the general requirement to exhaust administrative remedies. For example, exhaustion is not required where it would be futile, where the agency action is *ultra vires*, where exhaustion would cause irreparable injury, or where other equitable considerations preclude exhaustion. *Id*.

[30]     Here, upon receipt of the 1782 Notice which confirmed the Auditor's allocation of tax levies to the District, the City was required to file a statement with the DLGF no later than ten (10) days after receiving this annual notice of tax levy. The City has conceded that it never disputed any allocations that pre-date the commencement of this litigation, *i.e.,* prior to May 2016, by using the administrative remedies outlined in the 1782 Notice. Accordingly, the City is now foreclosed from pursuing these tax revenues. Moreover, as these levies have already been spent by the local government entity, it would be inequitable to allow the City to now—very belatedly—receive these tax levies.

[31]     In line with our decision in the first issue, we agree with the trial court's conclusion that the City is entitled to receive all future property taxes attributable to fire protection services in the Annexed Territories. If the Auditor fails to allocate future levies to the City, and the DLGF certifies this allocation, then the City should follow the administrative procedure outlined in I.C. § 6-1.1-17, as recently amended by our Legislature in 2019.

[32]     With respect to the allocations between the date of filing the declaratory judgment lawsuit in May 2016 and the judgment in February 2019, we are apprehensive that where an administrative remedy is readily available, "filing a declaratory judgment action is not a suitable alternative" to exhaustion. *Graham*, 124 N.E.3d at 1247. Accordingly, as the City does not invoke any exceptions to the general requirement to exhaust administrative remedies, the City is only entitled to receive these revenues if the City appealed the 1782 Notice within the requisite period of time. Therefore, we reverse the trial court

in this respect, and remand for further determination whether the City timely availed itself of this administrative procedure.

## CONCLUSION

[33] Based on the foregoing, we conclude that the City is entitled to receive the future tax revenues from the fire protection services it provided to the Annexed Territories. The City is not entitled to the past revenues. Finally, we conclude that the City is entitled to tax revenues between May 2016 and February 2019, if the City availed itself of the administrative remedy to appeal the Auditor's allocation. Accordingly, we remand to the trial court for determination whether the City timely appealed the tax revenues allocated between May 2016 and February 2019.

[34] Affirmed in part, reversed in part, and remanded for further proceedings.

[35] Bradford, C. J. concurs

[36] Vaidik, J. concurs in part and dissents in part with separate opinion

Southwest Allen County Fire
Protection District and Tera K.
Klutz, in her official capacity as
Auditor of Allen County,
Indiana,

*Appellants-Defendants,*

v.

City of Fort Wayne,

*Appellee-Plaintiff*

Court of Appeals Case No.
19A-PL-510

**Vaidik, Judge, concurring in part, dissenting in part.**

[37] I respectfully dissent in part. I believe that our holding in the first opinion—that the trial court had subject-matter jurisdiction over the City's declaratory-judgment action—was incorrect. As the District explains, with no dispute from the City, the Legislature has set forth what should happen if a political subdivision disagrees with an allocation of funds in a budget notice from the DLGF. *See* Appellant's Br. pp. 13-14. "The political subdivision has ten (10) calendar days from the date the political subdivision receives the notice to provide a response electronically in the manner prescribed by the department of

local government finance." Ind. Code § 6-1.1-17-16(g). If a political subdivision provides such a response, the DLGF "shall consider the adjustments as specified in the political subdivision's response" and "shall deliver a final decision to the political subdivision." *Id.* If the political subdivision remains unsatisfied, it can file a petition for judicial review "**in the tax court**." *Id.* at (j) (emphasis added). Because the Legislature has established a procedure that leads to the tax court, I believe we erred in determining that the trial court had subject-matter jurisdiction in this matter. *See* Ind. Code § 33-26-3-2 (establishing that a tax court has "any other jurisdiction conferred by statute").

[38] That being said, we must resolve this appeal in accordance with our first opinion. In that regard, I agree with the majority that the trial court properly interpreted Indiana Code section 36-8-11-22 and properly determined that the City is entitled to the property-tax revenues from February 2019 onward. Where I depart from the majority is on the issue of the 2016-2019 property-tax revenues.

[39] The City chose to file a declaratory-judgment action in the trial court. A trial court has the jurisdiction "to declare rights, status, and relations, and to interpret statutes, contracts, and instruments generally." *Brindley v. Meara*, 198 N.E. 301, 306 (Ind. 1935). Once the trial court declares the rights and stakes of the parties, execution of the order is left to "a court having jurisdiction to grant the relief." *Id.* Indiana's declaratory-judgment statute provides that trial courts, within their respective jurisdictions, "have the power to declare rights, status,

and other legal relations **whether or not further relief is or could be claimed**."
Ind. Code § 34-14-1-1 (emphasis added). Having declared the City's right to receive future tax revenues associated with the Annexed Territories, the trial court's job under our first opinion is done. The City is therefore not entitled to seek recovery of 2016-2019 property-tax revenues in the trial court. That is so because the City made the choice to file a declaratory-judgment action in the trial court instead of exhausting their administrative remedies by filing an objection with the DLGF each year. That was their strategic choice. Their inability to now seek recovery of the 2016-2019 property-tax revenues is a consequence of that choice.

[40] I am troubled by the majority's analysis requiring the City to exhaust its administrative remedies while the declaratory-judgment action was pending in the trial court for two reasons. First, that reasoning is inconsistent with what we said in the first opinion—that the trial court had jurisdiction over this dispute without the City having to exhaust its administrative remedies. Second, the majority's reasoning—requiring the City to exhaust its administrative remedies at the same time the trial court had jurisdiction—means that the City would have been required to file parallel proceedings in two separate courts— one in the trial court and one with the DLGF (followed by judicial review in the tax court). Parallel proceedings waste judicial resources, generate questions of which judgment controls, and may produce contradictory judgments.

[41] I therefore concur with the majority's conclusion that the trial court was correct in declaring that the City is statutorily entitled to the future property-tax

revenues associated with the Annexed Territories. However, I respectfully dissent as to its resolution of the 2016-2019 property-tax revenues. I would hold that the City is not entitled to those interim revenues and instruct the trial court to enter summary judgment on the 2016-2019 property-tax revenues for the District.